**EXHIBIT B-7**

Service provided by the Federal Ministry of Justice
and the Federal Office of Justice – www.gesetze-im-internet.de

Übersetzung durch Brian Duffett und Ute Reusch. Laufende Aktualisierung der Übersetzung durch Ute Reusch

Translation provided by Brian Duffett and Ute Reusch. Translation regularly updated by Ute Reusch

Stand: Die Übersetzung berücksichtigt die Änderung(en) des Gesetzes durch Artikel 3 des Gesetzes vom 10. August 2021 (BGBl. I S. 3433)

Version information: The translation includes the amendment(s) to the Act by Article 3 of the Act of 10 August 2021 (Federal Law Gazette I, p. 3433)

Zur Nutzung dieser Übersetzung lesen Sie bitte den Hinweis auf www.gesetze-im-internet.de unter "Translations".

For conditions governing use of this translation, please see the information provided at www.gesetze-im-internet.de under "Translations".

# Act against Unfair Competition

## (Gesetz gegen den unlauteren Wettbewerb – UWG)

Act against Unfair Competition in the version published on 3 March 2010 (Federal Law Gazette I, p. 254), as last amended by Article 3 of the Act of 10 August 2021 (Federal Law Gazette I, p. 3433)

This Act serves to implement Directive 2005/29/EC of the European Parliament and of the Council of 11 May 2005 concerning unfair business-to-consumer commercial practices in the internal market and amending Council Directive 84/450/EEC, Directives 97/7/EC, 98/27/EC and 2002/65/EC of the European Parliament and of the Council and Regulation (EC) No. 2006/2004 of the European Parliament and of the Council (OJ L 149, 11.6.2005, p. 22; rectified in OJ L 253, 25.9.2009, p. 18), as well as Directive 2006/114/EC of the European Parliament and of the Council of 12 December 2006 concerning misleading and comparative advertising (codified version) (OJ L 376, 27.12.2006, p. 21). This Act further serves to implement Article 13 of Directive 2002/58/EC of the European Parliament and of the Council of 12 July 2002 concerning the processing of personal data and the protection of privacy in the electronic communications sector (OJ L 201, 31.7.2002, p. 37), as last amended by Article 2 no. 7 of Directive 2009/136/EC (OJ L 337, 18.12.2009, p. 11).
The obligations under Directive 98/34/EC of the European Parliament and of the Council of 22 June 1998 laying down a procedure for the provision of information in the field of technical standards and regulations (OJ L 204, 21.7.1998, p. 37), as last amended by Directive 2006/96/EC (OJ L 363, 20.12.2006, p. 81), have been complied with.

## Chapter 1
## General provisions

### Section 1
### Purpose of the Act

This Act serves the protection of competitors, consumers and other market participants against unfair commercial practices. At the same time, it protects the interests of the public in undistorted competition.

### Section 2
### Definitions

(1) For the purposes of this Act,

Service provided by the Federal Ministry of Justice
and the Federal Office of Justice – www.gesetze-im-internet.de

1.      'commercial practice' means any conduct by a person for the benefit of that person's or a third party's business before, during or after the conclusion of a business transaction, which conduct is objectively connected with promoting the sale or the procurement of goods or services, or with the conclusion or the performance of a contract concerning goods or services; 'goods' is also deemed to include immovable property, 'services' rights and obligations;

2.      'market participant' means, in addition to competitors and consumers, any person who supplies or demands goods or services;

3.      'competitor' means any person who has a concrete competitive relationship with one or more entrepreneurs supplying or demanding goods or services;

4.      'communication' means any information which is exchanged or passed between a finite number of participants via a publicly accessible electronic communications service; this does not include information which is passed on to the public as part of a broadcasting service via an electronic communications network, insofar as such information cannot be linked with an identifiable participant or user receiving it;

5.      'code of conduct' means an agreement or set of rules which defines the conduct of entrepreneurs who have undertaken to be bound by the code in relation to business sectors or individual commercial practices, without such obligations having been imposed by statutory or administrative provisions;

6.      'entrepreneur' means any natural or legal person engaging in commercial practices within the framework of his, her or its trade, business, craft or profession and anyone acting in the name of, or on behalf of, such person;

7.      'professional diligence' means the standard of special skill and care towards consumers to which an entrepreneur can reasonably be expected to conform, commensurate with good faith and having regard to honest market practices, in the entrepreneur's field of activity;

8.      'to materially distort the economic behaviour of consumers' means to engage in a commercial practice to appreciably impair a consumer's ability to take an informed decision, thereby causing the consumer to take a transactional decision which he or she would not have taken otherwise;

9.      'transactional decision' means any decision taken by a consumer or other market participant regarding whether, how and on what terms to conclude a transaction, to make a payment for, to retain or dispose of goods or services, or to exercise a contractual right in relation to the goods or services, regardless of whether the consumer or other market participant decides to act.

(2) Section 13 of the Civil Code (*Bürgerliches Gesetzbuch*) applies accordingly to the term 'consumer'.

**Section 3**
**Prohibition of unfair commercial practices**

(1) Unfair commercial practices are illegal.
(2) Commercial practices targeting or reaching consumers are unfair if they are not in compliance with professional diligence and are suited to materially distorting the economic behaviour of consumers.
(3) The commercial practices in relation to consumers listed in the Annex to this Act are always illegal.
(4) When assessing commercial practices in relation to consumers, reference is to be made to the average consumer or, where the commercial practice is directed towards a particular group of consumers, to the average member of that group. Commercial practices which are

Service provided by the Federal Ministry of Justice
and the Federal Office of Justice – www.gesetze-im-internet.de

likely to materially distort the economic behaviour only of a clearly identifiable group of consumers who are particularly vulnerable to these practices or the underlying goods or services because of their mental or physical infirmity, age or credulity in a way which the entrepreneur could reasonably be expected to foresee are to be assessed from the perspective of the average member of that group.

## Section 3a
### Breach of law

Unfairness is deemed to have occurred where a person violates a statutory provision which is also intended to regulate market conduct in the interest of market participants and the breach of law is suited to appreciably harming the interests of consumers, other market participants and competitors.

## Section 4
### Protection of competitors

Unfairness is deemed to have occurred where a person

1.   discredits or denigrates the distinguishing marks, goods, services, activities, or personal or business circumstances of a competitor;

2.   asserts or disseminates facts about the goods, services or business of a competitor or about the entrepreneur or a member of the management of the business, such facts being suited to harming the operation of the business or the credit of the entrepreneur, to the extent that the facts are not demonstrably true; if the communications are confidential and if the person making or receiving the communication has a legitimate interest therein, the action is only unfair where facts are asserted or disseminated contrary to the truth;

3.   offers goods or services which are replicas of goods or services of a competitor if said person

   a)   causes avoidable deception of the purchaser regarding their commercial origin;

   b)   unreasonably exploits or impairs the assessment of the replicated goods or services; or

   c)   dishonestly obtained the knowledge or documents needed for the replicas;

4.   deliberately obstructs competitors.

## Section 4a
### Aggressive commercial practices

(1) Unfairness is deemed to have occurred where a person engages in an aggressive commercial practice which is suited to causing the consumer or other market participant to take a transactional decision which he or she would not have taken otherwise. A commercial practice is regarded as aggressive where, in the factual context and taking account of all its features and circumstances, it is suited to significantly impairing the consumer's or other market participant's freedom of choice by

1.   harassment,

2.   coercion, including the use of physical force, or

3.   undue influence.

Undue influence is deemed to have occurred where the entrepreneur exploits a position of power in relation to the consumer or other market participant so as to exert pressure, even without using or threatening to use physical force, in a way which significantly limits the consumer's or other market participant's ability to take an informed decision.

Service provided by the Federal Ministry of Justice
and the Federal Office of Justice – www.gesetze-im-internet.de

(2) When determining whether a commercial practice is aggressive within the meaning of subsection (1) sentence 2, account is to be taken of

1. the timing, location, nature or persistence of the practice;

2. the use of threatening or abusive language or behaviour;

3. the deliberate exploitation of any specific misfortune or circumstance of such gravity as to impair the consumer's or other market participant's judgement in order to influence his or her decision;

4. any onerous or disproportionate non-contractual barriers imposed by the entrepreneur where a consumer or other market participant wishes to exercise rights under the contract, including the right to terminate a contract or to switch to other goods or services or to another entrepreneur;

5. any threat to take any illegal action.

The circumstances of which account is to be taken pursuant to no. 3 include, in particular, the mental and physical infirmity, age, inexperience in commercial dealings, credulity, fears and predicament of consumers.

### Section 5
### Misleading commercial practices

(1) Unfairness is deemed to have occurred where a person engages in a misleading commercial practice which is suited to causing the consumer or other market participant to take a transactional decision which he or she would not have taken otherwise. A commercial practice is regarded as misleading if it contains false statements or other information suited to deception regarding the following circumstances:

1. the main characteristics of the goods or services, such as availability, nature, execution, benefits, risks, composition, accessories, method or date of manufacture, delivery or provision, fitness for purpose, uses, quantity, specification, after-sale customer assistance, complaint handling, geographical or commercial origin, the results to be expected from their use, or the results or material features of tests carried out on the goods or services;

2. the reason for the purchase, such as the existence of a specific price advantage, the price or the manner in which the price is calculated, or the conditions on the basis of which the goods are supplied or the services are provided;

3. the nature, attributes or rights of the entrepreneur such as his or her identity, assets, including intellectual property rights, the extent of his or her commitments, qualifications, status, approval, affiliation or connections, awards or distinctions, motives for the commercial practice or the nature of the sales process;

4. any statement or symbol in relation to direct or indirect sponsorship or approval of the entrepreneur or of the goods or services;

5. the need for a service, part, replacement or repair;

6. compliance with a code of conduct by which the entrepreneur has undertaken to be bound when he or she makes reference to such commitment; or

7. the rights of consumers, in particular those based on promised guarantees or warranty rights in the event of impaired performance.

(2) A commercial practice is also regarded as misleading if, in connection with the marketing of goods or services, including comparative advertising, it creates a risk of

Service provided by the Federal Ministry of Justice
and the Federal Office of Justice – www.gesetze-im-internet.de

confusion with other goods or services or with the trade mark or other distinguishing mark of a competitor.

(3) Information within the meaning of subsection (1) sentence 2 is also regarded as including information which forms part of comparative advertising as well as pictorial representations and other events which are targeted at, and are suitable for, taking the place of such information.

(4) It is presumed to be misleading to advertise with a price reduction in a case where the price concerned has been demanded for only an unreasonably short period of time. In the event of dispute as to whether and for what period of time the price was demanded, the burden of proof falls on the person who advertised with the price reduction.

### Section 5a
### Misleading by omission

(1) In assessing whether the concealment of a fact is misleading, consideration is, in particular, to be given to its significance for the transactional decision according to prevailing public opinion, as well as to the suitability of the concealment for influencing the decision.

(2) Unfairness is deemed to have occurred where a person, in a factual context and taking account of all the features and circumstances, omits material information

1. which the consumer needs, according to the context, to take an informed transactional decision and

2. whose omission is suited to causing the consumer to take a transactional decision which he or she would not have taken otherwise.

The following are also regarded as an omission of information:

1. the hiding of material information,

2. the provision of material information in an unclear, unintelligible or ambiguous manner,

3. the provision of material information in an untimely manner.

(3) Where goods or services are offered with reference to their characteristics and price in such a manner appropriate to the communication medium used that an average consumer can conclude the transaction, the following information is regarded as material within the meaning of subsection (2) if it is not already apparent from the context:

1. all the main characteristics of the goods or services to an extent appropriate thereto and to the communication medium used;

2. the identity and address of the entrepreneur and, where applicable, the identity and address of the entrepreneur on whose behalf he or she is acting;

3. the total price or, in cases where the nature of the goods or services means that such a price cannot be calculated in advance, the manner in which the price is calculated as well as, where appropriate, all additional freight, delivery or postal charges or, where these charges cannot be calculated in advance, the fact that such additional charges may be payable;

4. arrangements for payment, delivery and performance, as well as complaint handling policies insofar as they depart from the requirements of professional diligence; and

5. the existence of a right of withdrawal or cancellation.

(4) Such information is also regarded as material within the meaning of subsection (2) which may not be omitted in respect of consumers by virtue of EU Regulations or pursuant to legal

Service provided by the Federal Ministry of Justice
and the Federal Office of Justice – www.gesetze-im-internet.de

provisions for the implementation of EU Directives for commercial communication, including advertising or marketing.

(5) When deciding whether information has been omitted, account is to be taken of

1. the limitations of space or time imposed by the medium used to communicate the commercial practice and

2. any measures taken by the entrepreneur to make the information available to consumers by means other than the medium used to communicate the commercial practice referred to in no. 1.

(6) Unfairness is also deemed to have occurred where the commercial intent of a commercial practice is not identified, unless this is directly apparent from the context, and where such failure to identify the commercial intent is suited to causing the consumer to take a transactional decision which he or she would not have taken otherwise.

## Section 6
## Comparative advertising

(1) 'Comparative advertising' means any advertising which explicitly or by implication identifies a competitor or the goods or services offered by a competitor.
(2) Unfairness is deemed to have occurred where a person conducting comparative advertising uses a comparison which

1. does not relate to goods or services which meet the same needs or are intended for the same purpose;

2. does not objectively relate to one or more material, relevant, verifiable and representative features of the goods concerned or to the price of those goods or services;

3. leads, in the course of trade, to a risk of confusion between the advertiser and a competitor or between the goods or services offered or the distinguishing marks used by them;

4. takes unfair advantage of or impairs the reputation of a distinguishing mark used by a competitor;

5. discredits or denigrates the goods, services, activities, or personal or business circumstances of a competitor; or

6. presents goods or services as imitations or replicas of goods or services which are sold under a protected distinguishing mark.

## Section 7
## Unacceptable nuisance

(1) A commercial practice which constitutes an unacceptable nuisance to a market participant is illegal. This in particular applies to advertising in cases where it is apparent that the solicited market participant does not want this advertising.
(2) An unacceptable nuisance is always assumed in the case of

1. advertising using a medium of commercial communication which is not listed under nos. 2 and 3 and which is suited to distance marketing and through which a consumer is persistently solicited although he or she recognisably does not want it;

2. advertising by means of a telephone call made to a consumer without his or her prior express consent, or made to another market participant without at least the latter's presumed consent;

3. advertising using an automated calling machine, a fax machine or electronic mail without the addressee's prior express consent; or

4. advertising using communication

a) where the identity of the sender on whose behalf the communication is transmitted is concealed or kept secret or

b) which violates section 6 (1) of the Telemedia Act (*Telemediengesetz*) or in which the recipient is prompted to call up a website which violates said provision or

c) where there is no valid address to which the recipient can send an instruction to terminate transmission of communications of this kind, without costs arising by virtue thereof, other than transmission costs in accordance with the basic rates.

(3) Notwithstanding subsection (2) no. 3, an unacceptable nuisance is not assumed to exist in the case of advertising using electronic mail if

1. the entrepreneur has obtained from the customer the latter's electronic mail address in connection with the sale of goods or services;

2. the entrepreneur uses the address for direct advertising of his or her own similar goods or services;

3. the customer has not objected to this use; and

4. the customer is clearly and unequivocally advised, when the address is collected and each time it is used, that he or she can object to such use at any time, without costs arising by virtue thereof, other than transmission costs in accordance with the basic rates.

### Section 7a
### Consent to telephone advertising

(1) Whoever advertises to a consumer using a telephone call is required to document the consumer's prior express consent to the telephone advertising in an adequate form and at the time that consent is given and must store such documentation in accordance with subsection (2) sentence 1.

(2) Advertising enterprises must store the proof of consent referred to in subsection (1) for five years from the point in time at which the consent is given and after each use of that consent. Upon request, advertising enterprises are required immediately to submit the proof referred to in subsection (1) to the competent administrative authority as referred to in section 20 (3).

### Chapter 2
### Legal consequences

### Section 8
### Elimination; injunctive relief

(1) Whoever engages in an illegal commercial practice pursuant to section 3 or section 7 can be sued for elimination and, in the event of the risk of recurrence, to cease and desist. The claim to cease and desist already pertains in the event of the risk of such infringement of section 3 or section 7.

(2) Where the infringements are committed in a business by a member of staff or by a person exercising a mandate, the claim to cease and desist and the claim to elimination are also deemed to apply in relation to the owner of the business.

(3) The claims under subsection (1) vest in

1. any competitor which supplies or demands goods or services not only to an insignificant extent and not only occasionally;

Service provided by the Federal Ministry of Justice
and the Federal Office of Justice – www.gesetze-im-internet.de

2. those associations with legal personality which exist for the promotion of commercial or independent professional interests which are included in the list of qualified trade associations referred to in section 8b if they have a considerable number of members which are entrepreneurs which supply goods or services of the same or similar type on the same market and the infringement affects the interests of their members;

3. those qualified entities which are included in the list of qualified entities as referred to in section 4 of the Injunctive Relief Act (*Unterlassungsklagengesetz*) or those qualified entities from other Member States of the European Union which are included in the list kept by the European Commission as referred to in Article 4 (3) of Directive 2009/22/EC of the European Parliament and of the Council of 23 April 2009 on injunctions for the protection of consumer interests (OJ L 110, 1.5.2009, p. 30), as last amended by Regulation (EU) 2018/302 (OJ L 60I, 2.3.2018, p. 1);

4. chambers of industry and commerce, organisations established under the Trade and Crafts Code (*Handwerksordnung*) and other professional corporations under public law in the course of fulfilling their tasks, as well as trade unions in the course of fulfilling their tasks in relation to representing independent professional interests.

(4) The bodies referred to in subsection (3) nos. 2 and 3 may not assert any claims while their entry is dormant.

(5) Section 13 of the Injunctive Relief Act applies accordingly; the claims listed in section 13 (1) and (3) sentence 2 of the Injunctive Relief Act are replaced by the claims under this provision. In all other respects, the Injunctive Relief Act does not apply, unless one of the cases listed in section 4e of the Injunctive Relief Act applies.

### Section 8a
### Claimants in case of infringement of Regulation (EU) 2019/1150

In derogation from section 8 (3), claimants under section 8 (1) in the case of an infringement of Regulation (EU) 2019/1150 of the European Parliament and of the Council of 20 June 2019 on promoting fairness and transparency for business users of online intermediation services (OJ L 186, 11.7.2019, p. 57) are associations, organisations and public bodies which meet the conditions of Article 14 (3) and (4) of Regulation (EU) 2019/1150.

### Section 8b
### List of qualified trade associations

(1) The Federal Office of Justice keeps a list of qualified trade associations and publishes that list, as amended, on its website.

(2) An association with legal personality whose statutory tasks include pursuing and promoting commercial or independent professional interests as well as advising and informing on issues around fair competition is included in the list, upon its application, if

1. its membership includes at least 75 entrepreneurs,

2. it has, at the time of making the application, performed its statutory tasks for at least one year,

3. it appears certain, on the basis of its previous activity and its personnel, material and financial resources, that it

a) will in future continue to fulfil its statutory tasks effectively and properly on an sustained basis and

b) its claims are not predominantly asserted in order to generate income for itself from written warning notices or contractual penalties,

Service provided by the Federal Ministry of Justice
and the Federal Office of Justice – www.gesetze-im-internet.de

4.  its members are granted no allowances from the association's assets and persons who work for the association do not benefit from being paid an inappropriately large amount of remuneration or other allowances.

(3) Section 4 (3) and (4) and sections 4a to 4d of the Injunctive Relief Act apply accordingly.

### Section 8c
### Prohibition of abusive claims; liability

(1) The assertion of claims in accordance with section 8 (1) is not permissible if, giving due consideration to all the facts and circumstances, they are abusive.

(2) In case of doubt, an abusive claim is to be assumed where

1.  asserting the claims predominantly serves to establish a claim to compensation of expenses or of legal expenses or payment of a contractual penalty against the infringer,

2.  a competitor is asserting a considerable number of infringements of the same legal provision by issuing written warning notices if the number of asserted infringements is disproportionate to the extent of the competitor's own business activity or if it is to be assumed that the competitor does not itself bear the economic risk of its extrajudicial or court action,

3.  a competitor sets the value of a written warning notice inappropriately high,

4.  manifestly excessive contractual penalties have been set or demanded,

5.  a proposed obligation to cease and desist manifestly goes beyond the infringement which has incurred the written warning notice,

6.  several infringements which could have incurred a joint written warning notice each incur a separate written warning notice, or

7.  on account of an infringement for which several infringers are responsible the claims against the infringers cannot be jointly asserted without material reason.

(3) In the case of abusive claims, the opponent may demand from the claimant compensation for any expenses necessary for its legal defence. Further claims for compensation remain unaffected.

### Section 9
### Compensation for damage

Whoever, while acting with intent or negligently, engages in an illegal commercial practice pursuant to section 3 or section 7 is obliged to compensate competitors for the damage arising therefrom. The compensation claim may be asserted against persons responsible for periodical printed matter only in the case of an infringement while acting with intent.

### Section 10
### Confiscation of profits

(1) Whoever, while acting with intent, engages in an illegal commercial practice pursuant to section 3 or section 7, thereby making a profit to the detriment of numerous purchasers, can be sued for surrender of such profit to the Federal budget by those entitled, under section 8 (3) nos. 2 to 4, to assert a claim to cease and desist.

(2) Such payments as were made by the debtor because of the infringement to third parties or the state are to be deducted from the profit. Insofar as the debtor made such payments only at a time subsequent to satisfaction of the claim pursuant to subsection (1), the competent federal agency reimburses the debtor the profit paid in the sum of the recorded payments.

(3) Where there is more than one creditor claiming the profit, sections 428 to 430 of the Civil Code apply accordingly.

Service provided by the Federal Ministry of Justice
and the Federal Office of Justice – www.gesetze-im-internet.de

(4) Creditors notify the competent federal agency of the assertion of claims pursuant to subsection (1). Creditors may request reimbursement from the competent agency of the Federation for such expenses as were necessary to assert the claim, insofar as they cannot obtain satisfaction from the debtor. The reimbursement claim is limited to the sum of the profit paid to the Federal budget.

(5) The competent agency within the meaning of subsections (2) and (4) is the Federal Office of Justice.

## Section 11
## Limitation

(1) The claims under sections 8, 9 and 13 (3) become statute-barred after six months.

(2) The statute of limitation begins to run when

1. the claim arises and

2. the creditor obtains knowledge or should, without being grossly negligent, have obtained knowledge of the circumstances giving rise to the claim and of the debtor's identity.

(3) Compensation claims become statute-barred, irrespective of knowledge or of grossly negligent ignorance, 10 years after they arise, or 30 years at the latest after occurrence of the act giving rise to the damage.

(4) Other claims become statute-barred, irrespective of knowledge or of grossly negligent ignorance, three years after they arise.

## Chapter 3
## Procedural provisions

## Section 12
## Temporary relief; authorisation to publish; reduction of the pecuniary value of the dispute

(1) Provisional injunctions can be granted in order to secure a claim to cease and desist specified in this Act, also without exposition and substantiation of the conditions required by sections 935 and 940 of the Code of Civil Procedure (*Zivilprozessordnung*).

(2) Where by virtue of this Act a court action has been brought for injunctive relief, the court may authorise the prevailing party to publicise the judgment at the expense of the losing party if the prevailing party demonstrates a legitimate interest therein. The nature and extent of publication are determined in the judgment. The authorisation expires if it is not used within three months after entry into final and binding force. The declaration referred to in sentence 1 is not provisionally enforceable.

(3) Where a party in a legal dispute in which an action is brought to assert a claim resulting from one of the legal relations governed by this Act substantiates that the burden of the costs of the proceedings based on the full value in dispute would pose a substantial risk to his or her economic situation, the court may, upon the application of said party, order that said party's obligation to pay court costs is proportionate to a part of the value in dispute as adjusted to said party's economic situation. The order has the effect that

1. the beneficiary is also required to pay the fees of his or her lawyer only in relation to this part of the value in dispute,

2. the beneficiary, insofar as the costs of the legal dispute are imposed on that party or that party assumes these costs, must reimburse the court costs paid by the opposing party and the fees of his or her lawyer only in relation to the part of the value in dispute, and

3. the beneficiary's lawyer, insofar as extrajudicial costs are imposed on the opposing party or are assumed by that party, may recover his or her fees from the opposing party in relation to such value in dispute as applies to the latter.

Service provided by the Federal Ministry of Justice
and the Federal Office of Justice – www.gesetze-im-internet.de

(4) The application referred to in subsection (3) may be declared for the records of the registry of the court. It is to be made before the hearing in the main proceedings. Thereafter, it is permissible only where the assumed or determined value in dispute is subsequently increased by the court. The opposing party is to be heard before the decision is taken on the application.

### Section 13
### Written warning notice; obligation to cease and desist; liability

(1) Before instituting court proceedings, the party authorised to assert a claim to cease and desist is, as a rule, to issue the debtor with a written warning notice and to give the debtor the opportunity to settle the dispute by entering into an obligation to cease and desist subject to an appropriate contractual penalty.

(2) The written warning notice must clearly and comprehensively state the following:

1. the name or business name of the entity issuing the written warning notice and, in the case of it having a representative, the name or business name of its representative,

2. the conditions of entitlement under section 8 (3),

3. whether and in what amount a claim for reimbursement is being asserted and how it has been calculated,

4. the infringement, stating the factual circumstances,

5. in the cases referred to in subsection (4), that a claim to reimbursement of expenses is ruled out.

(3) If the written warning notice is justified and meets the requirements set out in subsection (2), the entity issuing the written warning notice may demand reimbursement of any necessary expenses from the entity issued with the written warning notice.

(4) The claim to reimbursement of any necessary expenses in accordance with subsection (3) is ruled out in the case of claimants pursuant to section 8 (3) no. 1 in the case of

1. infringements of statutory information and labelling obligations in electronic commerce or telemedia, or

2. other infringements of Regulation (EU) 2016/679 of the European Parliament and of the Council of 27 April 2016 on the protection of natural persons with regard to the processing of personal data and on the free movement of such data, and repealing Directive 95/46/EC (General Data Protection Regulation) (OJ L 119, 4.5.2016, p. 1; L 314, 22.11.2016, p. 72; L 127, 23.5.2018, p. 2) and of the Federal Data Protection Act (*Bundesdatenschutzgesetz*) by enterprises and commercially active associations, insofar as they generally employ fewer than 250 members of staff.

(5) Where the written warning notice is not justified or does not meet the requirements set out in subsection (2) or where a claim to reimbursement of expenses is asserted contrary to subsection (4), the entity issued with the written warning notice is entitled to claim compensation for any expenses necessary for its legal defence against the entity issuing the written warning notice. The entitlement under sentence 1 is limited to the amount of the claim to reimbursement of expenses which the entity issuing the written warning notice is asserting. In the case of an unjustified written warning notice, the entitlement referred to in sentence 1 does not exist if it was impossible for the entity issuing the written warning notice to recognise the lack of justification for the written warning notice at the time of its issue. Further claims to compensation remain unaffected.

### Section 13a
### Contractual penalty

(1) When determining an appropriate contractual penalty as per section 13 (1), consideration is to be given to the following:

Service provided by the Federal Ministry of Justice
and the Federal Office of Justice – www.gesetze-im-internet.de

1. the nature, extent and consequences of the infringement,

2. the culpability of the infringement and, in the case of culpable infringement, the severity of the guilt,

3. the size, market strength and competitiveness of the entity issued with a written warning notice, and

4. the economic interest of the entity issued with a written warning notice in past and future infringements.

(2) The agreement of a contractual penalty in accordance with subsection (1) is ruled out for claimants pursuant to section 8 (3) no. 1 in the case of a first written warning notice in the case of infringements under section 13 (4) if the entity issued with the written warning notice generally employs fewer than 100 members of staff.

(3) Contractual penalties may not exceed 1,000 euros if, in the light of the nature, extent and consequences of the infringement, the infringement interferes with the interests of consumers, competitors and other market participants to only an insignificant degree and if the entity issued with the written warning notice generally employs fewer than 100 members of staff.

(4) If the entity issued with the written warning notice, upon the request of the entity issuing the written warning notice, promises to pay an appropriate contractual penalty, then it is liable only to pay an appropriate contractual penalty.

(5) Where agreement has only been reached on payment of a contractual penalty but it has not yet been quantified, the entity issued with the written warning notice may, in the case of disagreement as to the amount of the penalty, apply to a conciliation board pursuant to section 15 even without the consent of the entity issuing the written warning notice. The same applies where the entity issued with the written warning notice in accordance with subsection (4) is only liable to pay an appropriate contractual penalty. Where proceedings are pending before a conciliation board, an action filed after application has been made to the conciliation board is not admissible.

**Section 14**
**Local jurisdiction and competence; authorisation to issue statutory instruments**

(1) Exclusive jurisdiction for all civil disputes to assert a claim on the basis of this Act lies with the regional courts.

(2) Jurisdiction for all civil disputes to assert a claim on the basis of this Act lies with that court in whose district the defendant has its place of general jurisdiction. Jurisdiction for all civil disputes to assert a claim on the basis of this Act also lies with that court in whose district the infringement was committed. Sentence 2 does not apply to

1. disputes concerning infringements in electronic commerce or telemedia, or

2. disputes asserted by an entity entitled under section 8 (3) nos. 2 to 4,

unless the defendant has no place of general jurisdiction in Germany.

(3) The *Land* governments are authorised to designate, by statutory instrument, one regional court as the court which is to hear competition disputes for the districts of several regional courts, provided this is conducive to the administration of justice in respect of competition disputes. The *Land* governments may delegate this power, by statutory instrument, to the *Land* departments of justice. The *Länder* may also, by agreement, delegate court actions incumbent upon the courts of one *Land* pursuant to subsection (1) in whole or in part to the competent court of another *Land*.

**Section 15**
**Conciliation boards**

Service provided by the Federal Ministry of Justice
and the Federal Office of Justice – www.gesetze-im-internet.de

(1) The *Land* governments are to establish conciliation boards at the Chambers of Industry and Commerce for the resolution of civil law disputes where a claim is asserted by virtue of this Act (conciliation boards).

(2) Conciliation boards are to be composed of a chairperson who is qualified to hold judicial office pursuant to the German Judiciary Act (*Deutsches Richtergesetz*) and persons sitting as assessors. In the event of referral by a qualified entity entitled to assert a claim to cease and desist in accordance with section 8 (3) no. 3, an equal number of entrepreneurs and consumers are to act as assessors, otherwise at least two expert entrepreneurs. The chairperson is, as a rule, to be experienced in the field of competition law. For each disputed case the persons sitting as assessors are to be chosen by the chairperson from a list which is to be compiled annually for the calendar year. Appointment is, as a rule, to be effected with the agreement of the parties. Sections 41 to 43 and section 44 (2) to (4) of the Code of Civil Procedure apply accordingly to the exclusion and rejection of members of the conciliation board. The regional court (chamber for commercial matters or, in the event of there being no such chamber, the civil chamber) with jurisdiction in respect of the seat of the conciliation board gives a decision on a motion of challenge.

(3) Referral may be made to a conciliation board in civil law disputes where a claim is asserted by virtue of this Act, provided that the opposing party consents thereto. Insofar as commercial practices concern consumers, each party may refer the matter to a conciliation board for a discussion with the opposing party regarding the dispute; such referral does not require the consent of the opposing party.

(4) Section 14 applies accordingly to the jurisdiction of the conciliation boards.

(5) The chairperson of the conciliation board may make an order for the personal appearance of the parties. The conciliation board may impose an administrative fine on a party absent without excuse. An immediate complaint in accordance with the provisions of the Code of Civil Procedure may be lodged regarding the order for personal appearance and regarding the imposition of an administrative fine with the regional court (chamber for commercial matters or, in the event of there being no such chamber, the civil chamber) with jurisdiction in respect of the seat of the conciliation board.

(6) The conciliation board is to strive for a friendly settlement. It may make the parties a written settlement proposal, giving its reasons for the settlement proposed. The settlement proposal and the reasons therefor may only be published with the consent of the parties.

(7) If a settlement is reached, it must be recorded in a specific document bearing the date upon which it was reached and it must be signed by the members of the conciliation board who took part in the negotiation as well as by the parties. There may be recourse to compulsory execution in respect of a settlement concluded before the conciliation board; section 797a of the Code of Civil Procedure applies accordingly.

(8) The conciliation board may refuse to initiate the negotiation of a settlement if, at the outset, it considers the asserted claim to be ill-founded or considers itself as not having jurisdiction.

(9) The statute of limitations is interrupted by referral to a conciliation board as though a court action had been brought. If no settlement is reached, the time at which the proceedings were brought to an end is to be established by the conciliation board. The chairperson must notify the parties thereof.

(10) Where a legal dispute of the kind referred to in subsection (3) sentence 2 has been brought before a court without prior referral to a conciliation board, the court may, upon application and upon setting down a new date for a hearing, enjoin the parties to refer the matter to the conciliation board in order to bring about a friendly settlement prior to such date. In proceedings concerning an application for the granting of a provisional injunction, such order is only admissible with the consent of the opposing party. Subsection (8) does not apply. Where proceedings are pending before the conciliation board, a court action is not admissible if it is brought only by the party opposing the application after referral to the conciliation board for a declaration to the effect that the asserted claim does not exist.

Service provided by the Federal Ministry of Justice
and the Federal Office of Justice – www.gesetze-im-internet.de

(11) The *Land* governments are authorised to issue, by statutory instrument, the provisions required to implement the aforementioned provisions and regulate proceedings before the conciliation boards, in particular regarding supervision of the conciliation boards, regarding their composition, including adequate participation of entrepreneurs who are not members of the chambers of industry and commerce (section 2 (2) to (6) of the Act for Temporary Regulation of the Law Governing the Chambers of Industry and Commerce (*Gesetz zur vorläufigen Regelung des Rechts der Industrie- und Handelskammern*), in the consolidated version published in Federal Law Gazette III, Index No. 701-1), and regarding the enforcement of administrative fines, as well as for making stipulations on the charging of fees by the conciliation board. When staffing conciliation boards, the proposals made by consumer associations established for a *Land* and supported with public funds are to be taken into consideration when determining the consumers as referred to in subsection (2) sentence 2.

(12) Notwithstanding subsection (2) sentence 1, in Mecklenburg-Western Pomerania, Saxony, Saxony-Anhalt and Thuringia, a person with legal knowledge and qualified to hold professional judicial office under the law of the German Democratic Republic may also be made chairperson of the conciliation board.

### Section 15a
### Transitional provision to the Act to Strengthen Fair Competition

(1) Section 8 (3) no. 2 does not apply to proceedings which were already pending on 1 September 2021.

(2) Sections 13 and 13a (2) and (3) do not apply to written warning notices which had already been received before 2 December 2020.

### Chapter 4
### Criminal law provisions and provisions on regulatory offences

### Section 16
### Advertising incurring criminal liability

(1) Whoever, with the intent of creating the impression of a particularly favourable offer, misleadingly advertises while using false statements in public announcements, or in communications directed towards a wider audience, is liable to imprisonment not exceeding two years or to a fine.

(2) Whoever, in the course of trade, operates to cause consumers to purchase goods, services or rights by holding out the prospect of their obtaining specific benefits from the promoter himself or herself or from a third party if they cause other persons to conclude equivalent transactions where, in terms of this kind of advertising, these other persons are, in turn, to receive such benefits for corresponding advertising directed towards further purchasers, is liable to imprisonment not exceeding two years or to a fine.

### Sections 17 to 19
### (repealed)

### Section 20
### Provisions on regulatory offences

(1) Whoever, while acting with intent or negligently,

    1.    contrary to section 7 (1) sentence 1 in conjunction with (2) no. 2 or no. 3, advertises to a consumer, by means of a telephone call or using an automatic calling machine, without that consumer's express consent,

    2.    contrary to section 7a (1), does not document the consent referred to therein, does not do so correctly, in full or in good time or does not store it or does not store it for at least five years,

Service provided by the Federal Ministry of Justice
and the Federal Office of Justice – www.gesetze-im-internet.de

3. contrary to section 8b (3) in conjunction with section 4b (1) of the Injunctive Relief Act, also in conjunction with a statutory instrument as referred to in section 4d no. 2 of the Injunctive Relief Act, does not make a report referred to therein, does not do so correctly, in full or in good time, or

4. infringes a statutory instrument as referred to in section 8b (3) in conjunction with section 4d no. 1 of the Injunctive Relief Act or an enforceable order made on the basis of such a statutory instrument, insofar as the statutory instrument makes reference to this provision in relation to a particular offence,

is deemed to have committed a regulatory offence.

(2) The regulatory offence in the cases referred to in subsection (1) no. 1 may be penalised by imposition of a regulatory fine not exceeding 300,000 euros, in the cases referred to in subsection (1) no. 2 a regulatory fine not exceeding 50,000 euros and in all other cases a regulatory fine not exceeding 100,00 euros.

(3) The administrative authority within the meaning of section 36 (1) no. 1 of the Act on Regulatory Offences (*Ordnungswidrigkeitengesetz*) in the cases referred to in subsection (1) no. 1 and no. 2 is the Federal Network Agency for Electricity, Gas, Telecommunications, Post and Railway, in all other cases the Federal Office of Justice.

### Annex (to section 3 (3))

The following are illegal commercial practices within the meaning of section 3 (3):

1. the false statement by an entrepreneur that he or she is a signatory to a code of conduct;

2. using a trust mark, quality mark or the equivalent without having obtained the necessary authorisation;

3. making the false statement that a code of conduct has an endorsement from a public or other body;

4. making the false statement that an entrepreneur, a commercial practice by that entrepreneur, or goods or services have been approved, endorsed or authorised by a public or private body; or making the false statement that the terms of the approval, endorsement or authorisation have been complied with;

5. making an invitation to purchase goods or services within the meaning of section 5a (3) at a specified price when the entrepreneur does not disclose that he or she has reasonable grounds for believing that he or she will not be able to supply these, or equivalent, goods or services, or procure such supply, at such specified price for a period which is, and in quantities which are, reasonable (bait advertising). Where stocks are available for less than two days, it is incumbent on the entrepreneur to furnish proof of reasonableness;

6. making an invitation to purchase goods or services within the meaning of section 5a (3) at a specified price in a situation where the entrepreneur, with the intention of promoting different goods or services instead, then demonstrates a defective example of the goods or services, or refuses to show the consumer the goods or services advertised, or refuses to take orders for the goods or services or to perform the advertised service within a reasonable time;

7. making the false statement that certain goods or services will only be available generally or on particular terms for a very limited time in order to elicit an immediate transactional decision from the consumer without the latter having the time and the opportunity to take an informed decision;

Service provided by the Federal Ministry of Justice
and the Federal Office of Justice – www.gesetze-im-internet.de

8. making after-sale customer assistance available in a language which is not the language in which the negotiations were conducted before conclusion of the transaction if the language originally used is not an official language of the Member State where the entrepreneur is located; this does not apply if the consumer is informed before conclusion of the transaction that such services will be made in a language different from the language originally used;

9. making the false statement, or creating the false impression, that goods or services can be sold with legal effect;

10. making the false statement, or creating the false impression, that legally existing rights form a distinctive feature of the offer;

11. using editorial content for the purpose of sales promotion where the entrepreneur has paid for this promotion without such connection being clearly identifiable from the content or by images or sounds (advertorial);

12. making a false claim concerning the nature and extent of the risk to the personal security of the consumer or the consumer's family if the consumer does not purchase the goods or services offered;

13. promoting goods or services similar to the goods or services of a specific manufacturer with the intention of deceiving the consumer regarding the commercial origin of the goods or services promoted;

14. establishing, operating or promoting a sales promotional scheme requiring the consumer to pay a financial contribution in return for the opportunity to receive compensation solely or primarily by introducing other participants into the scheme (snowball or pyramid scheme);

15. falsely claiming that the entrepreneur is about to cease trading or move premises;

16. claiming that certain goods or services are able to facilitate winning in games of chance;

17. making the false statement, or creating the false impression, that the consumer has already won, or will win, a prize, or that the consumer will obtain another benefit although such prize or benefit does not in fact exist, or that in any event the possibility of obtaining a prize or other benefit is subject to the consumer paying money or incurring a cost;

18. falsely claiming that goods or services are able to cure illnesses, dysfunctions or malformations;

19. giving false information on market conditions or sources of supply with the intention of inducing the consumer to purchase or use goods or services at conditions less favourable than general market conditions;

20. offering a competition or promotional contest without awarding the prospective prizes or a reasonable equivalent;

21. offering goods or services as being 'gratis', 'free', 'without charge' or using a similar expression although costs are to be paid therefor; this does not apply to the unavoidable cost of responding to the offer of goods or services or of collecting or paying for delivery of the goods or of using the services;

22. transmitting marketing material together with a document seeking payment and creating the false impression that the goods or services marketed have already been ordered;

23. making the false statement, or creating the false impression, that the entrepreneur is a consumer or is not acting for purposes relating to his or her business, trade, craft or profession;

24. making the false statement, or creating the false impression, that after-sale customer assistance in relation to goods or services is available in a Member State of the European Union other than the one where the goods or services are sold;

25. creating the impression that the consumer cannot leave certain premises before prior conclusion of a contract;

26. ignoring, while conducting a personal visit to the home, a request made by the person being visited to leave or not to return, unless such visit is justified for the purpose of lawful enforcement of a contractual obligation;

27. measures to dissuade the consumer from exercising his or her contractual rights in an insurance relationship by requiring said consumer to produce such documents, on assertion of his or her claim, as are not needed as proof of that claim, or failing systematically to respond to correspondence asserting said claim;

28. including in an advertisement a direct exhortation to children to purchase the goods or services marketed or to persuade their parents or other adults to do so;

29. demanding payment for goods or services which have not been ordered but have been supplied or rendered, or demanding the return or safekeeping of items which have not been ordered; and

30. explicitly stating that the entrepreneur's work or livelihood will be in jeopardy if the consumer does not purchase the goods or services.