# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

ABIOMED, INC. and ABIOMED EUROPE GmbH,

          Plaintiffs,

   v.

ENMODES GmbH and TIM KAUFMANN,

          Defendants.

**Case No. 1:23-cv-10087**

## DEFENDANTS' ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS

### DEFENDANTS ANSWER TO PLAINTIFFS' COMPLAINT AND DEMAND FOR TRIAL BY JURY

Now come Defendants, Enmodes GmbH and Tim Kaufmann (collectively, "Defendants"), by and through their attorneys, who respond to the Plaintiffs' Complaint [ECF No. 1] as follows. To the extent any factual allegations are not explicitly admitted, they are denied.[1]

## I.     INTRODUCTION

1.     Defendants admit that this case asserts claims of breach of contract and misappropriation of trade secrets. Defendants deny that they have breached any contract with Plaintiffs and deny that they have misappropriated any "valuable trade secrets" or confidential business information of Plaintiffs.

2.     Defendants admit that Plaintiffs are involved in the field of medical devices. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 2 of the Complaint and therefore deny the same.

---

[1] To the extent the headings in the Complaint are intended to constitute factual allegations, Defendants deny each and every such allegation.

**HIGHLY CONFIDENTIAL**

3.     Defendants admit that Abiomed Europe GmbH entered into consulting agreements with Defendant Enmodes GmbH ("Enmodes"), whose co-founder and managing director is Defendant Dr. Tim Kaufmann ("Kaufmann"). Defendants admit that, pursuant to the Consulting Services Agreement ("CSA"), Enmodes was to provide services to assist with the development of Abiomed's foldable heart pump, Impella ECP. Defendants deny the remaining allegations contained in paragraph 3 of the Complaint.

4.     Defendants lack knowledge as to Plaintiffs' state of mind and on that basis deny the allegations contained in paragraph 4 of the Complaint.

5.     Defendants deny the allegations contained in paragraph 5 of the Complaint.

6.     Defendants deny that they have committed any wrongs and therefore deny the allegations contained in paragraph 6 of the Complaint.

## II.     PARTIES

7.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 7 of the Complaint and therefore deny the same.

8.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 8 of the Complaint and therefore deny the same.

9.     Defendants admit the allegations contained in paragraph 9 of the Complaint.

10.     Defendants admit the allegations contained in paragraph 10 of the Complaint.

## III.     JURISDICTION AND VENUE

11.     Defendants deny the allegations contained in paragraph 11 for the reasons set forth in their motion to dismiss, ECF Nos. 20-21.

12.     Defendants deny the allegations contained in paragraph 12 of the Complaint.

13.     Defendants deny the allegations contained in paragraph 13 of the Complaint.

**HIGHLY CONFIDENTIAL**

14.     Paragraph 14 of the Complaint sets forth legal conclusions to which no response is required. To the extent that paragraph 14 sets forth factual allegations, such allegations are denied.

15.     Defendants deny that they have misappropriated any Abiomed confidential information or trade secrets and therefore deny the factual allegations of paragraph 15.  Paragraph 15 of the Complaint also sets forth legal conclusions to which no response is required.

16.     Defendants deny the allegations contained in paragraph 16 of the Complaint.

## IV.     STATEMENT OF FACTS

17.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 17 of the Complaint and therefore deny the same.

18.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 18 of the Complaint and therefore deny the same.

19.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 19 of the Complaint and therefore deny the same.

20.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 19 of the Complaint and therefore deny the same.

21.     Defendants deny the allegations contained in paragraph 21 of the Complaint.

22.     Defendants deny the allegations contained in paragraph 22 of the Complaint.

23.     Defendants deny the allegations contained in paragraph 23 of the Complaint.

24.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 24 of the Complaint and therefore deny the same.

25.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 25 of the Complaint and therefore deny the same.

**HIGHLY CONFIDENTIAL**

26.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 26 of the Complaint because it is unclear what "technical design details" and "small differences" mean as referenced in this paragraph and therefore deny the same.

27.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 27 of the Complaint because it is unclear what "extremely high speeds" and "tiny changes in geometry or small deviations from intended design" means as referenced in this paragraph and therefore deny the same.

28.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 28 of the Complaint because it is unclear what "comprehensive" means as referenced in this paragraph and therefore deny the same.  Defendants also lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 28 of the Complaint and therefore deny the same.

29.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 29 of the Complaint and therefore deny the same.

30.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 30 of the Complaint and therefore deny the same.

31.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 31 of the Complaint and therefore deny the same.

32.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 32 of the Complaint and therefore deny the same.

33.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 33 of the Complaint and therefore deny the same.

**HIGHLY CONFIDENTIAL**

34.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 34 of the Complaint and therefore deny the same.

35.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 35 of the Complaint and therefore deny the same.

36.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 36 of the Complaint and therefore deny the same.

37.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 37 of the Complaint and therefore deny the same.

38.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 38 of the Complaint and therefore deny the same.

39.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 39 of the Complaint and therefore deny the same.

40.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 40 of the Complaint and therefore deny the same.

41.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 41 of the Complaint and therefore deny the same.

42.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 42 of the Complaint and therefore deny the same.

43.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 43 of the Complaint and therefore deny the same.

44.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 44 of the Complaint and therefore deny the same.

**HIGHLY CONFIDENTIAL**

45.     Defendants admit that the Impella ECP received Breakthrough Device designation by the Food and Drug Administration.  What designation under the Breakthrough Device Program means speaks for itself and any characterization inconsistent therewith is denied.

46.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 46 of the Complaint and therefore deny the same.

47.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 47 of the Complaint and therefore deny the same.

48.     Defendants admit that Enmodes was founded in 2011 by persons associated with RWTH Aachen University in Aachen, Germany, including Tim Kaufmann and Ulrich Steinseifer, initial shareholders, and admit that Kaufmann, who had a majority share, acted as managing director of Enmodes. Defendants deny any remaining allegations of paragraph 48 of the Complaint.

49.     Defendants admit that Enmodes provided design and engineering services in the medical device field with a focus on computation analyses and numerical simulations, as well as their optimization and validation. Defendants deny any remaining allegations of paragraph 49 of the Complaint.

50.     Defendants admit that Enmodes began working on a project to build an extra corporeal membrane ("ECMO") device, and that an ECMO device assists patients who cannot perform adequate oxygen-carbon dioxide gas exchange by ordinary breathing. Responding further, Defendants admit that when connected to an ECMO, the patient's blood flows out of the body, into an artificial lung that performs gas exchange, and this is pumped back into the body. Defendants deny the remaining allegations of paragraph 50 of the Complaint.

51.     Defendants admit the allegations contained in paragraph 51 of the Complaint.

**HIGHLY CONFIDENTIAL**

52.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 52 of the Complaint and therefore deny the same.

53.     Defendants deny that Kaufmann approached Siess and asked whether Abiomed would be interested in adapting the Enmodes ECMO technology to design its lung device. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 53 of the Complaint and therefore deny the same.

54.     Defendants admit that Enmodes GmbH entered into the Mutual Non-Disclosure Agreement ("2016 MNDA") with Abiomed Europe GmbH. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 54 of the Complaint and therefore deny the same.

55.     The 2016 MNDA speaks for itself, and any characterization inconsistent therewith is denied.

56.     The 2016 MNDA speaks for itself, and any characterization inconsistent therewith is denied.

57.     The 2016 MNDA speaks for itself, and any characterization inconsistent therewith is denied.   Defendants admit that Enmodes GmbH entered into a Mutual Non-Disclosure Agreement ("2021 MNDA") with Abiomed Europe GmbH.  The 2021 MNDA speaks for itself, and any characterization inconsistent therewith is denied.

58.     Defendants admit that Enmodes GmbH entered into a 2017 Development & License Agreement ("2017 DLA") with Abiomed Europe GmbH.  The 2017 DLA speaks for itself, and any characterization inconsistent therewith is denied.

59.     The 2017 DLA speaks for itself, and any characterization inconsistent therewith is denied.

**HIGHLY CONFIDENTIAL**

60.     The 2017 DLA speaks for itself, and any characterization inconsistent therewith is denied.

61.     Defendants admit that the 2017 DLA was negotiated in the fall of 2017 and that Kaufmann, McEvoy, and Siess were involved in the negotiations and that negotiations occurred by email and telephone call. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 61 of the Complaint and therefore deny the same.

62.     Defendants admit that Abiomed Europe GmbH and Enmodes GmbH entered into an Amended and Restated Development and License Agreement ("2019 Amended DLA"). The 2019 Amended DLA speaks for itself, and any characterization inconsistent therewith is denied. The 2017 DLA speaks for itself, and any characterization inconsistent therewith is denied. To the extent that paragraph 62 sets forth factual allegations, such allegations are denied.

63.     Defendants admit that Kaufmann, Kuns (Deputy CEO and CFO), Began and Siess were involved in the negotiations for the 2019 Amended DLA and that negotiations occurred by email and telephone call. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 63 of the Complaint and therefore deny the same.

64.     Defendants admit the allegations contained in paragraph 64 of the Complaint.

65.     Defendants admit that Enmodes worked on the Impella BTR heart pump project. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 65 of the Complaint and therefore deny the same.

66.     Defendants admit that Kaufmann represented that Enmodes was going to focus on building its own products.  Defendants deny that they were seeking working capital from Abiomed

**HIGHLY CONFIDENTIAL**

or that Kaufmann represented that Enmodes would provide exclusive consulting services for Abiomed and its ongoing projects. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 65 of the Complaint and therefore deny the same.

67.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 67 of the Complaint and therefore deny the same.

68.     Defendants admit that Abiomed Europe and Enmodes entered into a Consulting Services Agreement ("CSA") in 2020. The CSA speaks for itself, and any characterization inconsistent therewith is denied.

69.     The CSA speaks for itself, and any characterization inconsistent therewith is denied. Should paragraph 69 be deemed to contain allegations directed to Defendants, Defendants deny those allegations.

70.     The CSA speaks for itself, and any characterization inconsistent therewith is denied. Should paragraph 70 be deemed to contain allegations directed to Defendants, Defendants deny those allegations.

71.     The CSA speaks for itself for itself, and any characterization inconsistent therewith is denied. Should paragraph 71 be deemed to contain allegations directed to Defendants, Defendants deny those allegations.

72.     Defendants deny that Abiomed, Inc. and Enmodes entered into a Statement of Work ("SOW"). The remainder of the SOW speaks for itself, and any characterization inconsistent therewith is denied. Should paragraph 72 be deemed to contain allegations directed to Defendants, Defendants deny those allegations.

**HIGHLY CONFIDENTIAL**

73.     The CSA speaks for itself, and any characterization inconsistent therewith is denied. Should paragraph 73 be deemed to contain allegations directed to Defendants, Defendants deny those allegations.

74.     Defendants admit that Kaufmann and Kuns, on behalf of Enmodes GmbH, and Began, Mueller-Hillebrand, and Siess, on behalf of Abiomed Europe GmbH, were involved in negotiation of the CSA and SOW from January 2020 to July 2020 by email, telephone, and video conferences. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 74 of the Complaint and therefore deny the same.

75.     The May 13, 2020 email speaks for itself, and any characterization inconsistent therewith is denied. Should paragraph 75 be deemed to contain allegations directed to Defendants, Defendants deny those allegations.

76.     Defendants deny the allegations contained in paragraph 76 of the Complaint.

77.     The SOW speaks for itself, and any characterization inconsistent therewith is denied. Defendants deny the remaining allegations contained in paragraph 77 of the Complaint.

78.     Defendants admit that Enmodes received €5.444 million for work performed under the CSA and that Enmodes received over €6 million for work performed under the Development License Agreement.  Defendants deny the remaining allegations contained in paragraph 78 of the Complaint.

79.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 79 of the Complaint because it is unclear what "significant portion" means as referenced in this paragraph and therefore deny the same. Defendants deny the remaining allegations contained in paragraph 79 of the Complaint.

**HIGHLY CONFIDENTIAL**

80.     Defendants admit that before Abiomed Europe GmbH and Enmodes began negotiating the CSA and SOW, Enmodes 100% owned Hong Kong-based subsidiary, Lungshield Holding Ltd. (HK), and its subsidiary, Lungshield Medical (Suzhou) LLC, was already developing medical devices.  Defendants deny the remaining allegations contained in paragraph 80 of the Complaint.

81.     Defendants admit that Enmodes shares were sold to Lungshield Holding Ltd. (HK). Defendants deny the remaining allegations contained in paragraph 81 of the Complaint.

82.     Defendants deny the allegations contained in paragraph 82 of the Complaint.

83.     Defendants lack knowledge or information as to Abiomed's beliefs and on that basis deny the allegations contained in paragraph 83 of the Complaint.  Should paragraph 83 be deemed to contain allegations directed to Defendants, Defendants deny those allegations.

84.     Defendants admit that Enmodes received ZIP files containing CAD models of the Impella ECP model.  Defendants admit that there were communications on or around December 3, 2020 referring to a file that Enmodes was unable to download.  Defendant deny the remaining allegations contained in paragraph 84 of the Complaint.

85.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 85 of the Complaint and therefore deny the same.

86.     Defendants admit that Kaufmann is the Managing Director of Enmodes and has access to documents in Enmodes' files.  Defendants deny the remaining allegations contained in paragraph 86 of the Complaint.

87.     Defendants deny the allegations contained in paragraph 87 of the Complaint.

88.     Defendants admit that a rotor is an important part of a heart pump and that its function is to move blood through the pump. Defendants lack knowledge or information sufficient

HIGHLY CONFIDENTIAL

to form a belief as to the truth of the remaining allegations contained in paragraph 88 of the Complaint and therefore deny the same.

89.     Defendants deny the allegations contained in paragraph 89 of the Complaint.

90.     Paragraph 90 of the Complaint sets forth a legal conclusion to which no response is required.

91.     Paragraph 91 of the Complaint sets forth a legal conclusion to which no response is required. To the extent that paragraph 91 sets forth factual allegations, such allegations are denied.

92.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 92 of the Complaint and therefore deny the same.

93.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 93 of the Complaint and therefore deny the same.

94.     Defendants admit that Abiomed shared information with Enmodes about the tangential rotor design.  Defendants deny the remaining allegations contained in paragraph 94 of the Complaint.

95.     Defendants admit that Abiomed shared features of the Impella ECP with Enmodes. Defendants deny the remaining allegations contained in paragraph 95 of the Complaint.

96.     Defendants admit that Enmodes employees attended a meeting with Abiomed employees on November 26, 2020 and that any slides presented at the meeting speak for themselves. To the extent there are other factual allegations directed to Defendants, Defendants deny the remaining allegations contained in paragraph 96 of the Complaint.

97.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 97 of the Complaint and therefore deny the same.

**HIGHLY CONFIDENTIAL**

98.     Defendants admit that Enmodes provided engineering service activities and deny the remaining allegations contained in paragraph 98 of the Complaint.

99.     The CSA speaks for itself, and any characterization inconsistent therewith is denied. Defendants deny the remaining allegations contained in paragraph 99 of the Complaint.

100.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 100 of the Complaint and therefore deny the same.

101.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 101 of the Complaint and therefore deny the same.

102.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 102 of the Complaint and therefore deny the same.

103.    Defendants admit to summarizing findings in project reports. The reports speak for themselves and any characterization inconsistent therewith is denied. Defendants deny any remaining allegations contained in paragraph 103 of the Complaint.

104.    The CSA speaks for itself, and any characterization inconsistent therewith is denied. Defendants deny the remaining allegations contained in paragraph 104 of the Complaint.

105.    Defendants deny the allegations contained in paragraph 105 of the Complaint.

106.    Paragraph 106 of the Complaint sets forth a legal conclusion to which no response is required. To the extent that paragraph 106 sets forth factual allegations, such allegations are denied.

107.    Defendants admit that the rotating action of a pump rotor draws blood into the blood pump, discharges blood from the pump into the cannula, and then pushes the blood through the openings at the far end of the cannula.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 107 of the Complaint because

13

**HIGHLY CONFIDENTIAL**

it is unclear what "essentially a hose" means as referenced in this paragraph and therefore deny the same. The remaining allegations of paragraph 107 of the Complaint sets forth legal conclusions to which no response is required. To the extent that paragraph 107 sets forth factual allegations, such allegations are denied.

108. Defendants deny the allegations contained in paragraph 108 of the Complaint.

109. Defendants deny the allegations contained in paragraph 109 of the Complaint.

110. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 110 of the Complaint and therefore deny the same.

111. Defendants deny the allegations contained in paragraph 111 of the Complaint.

112. Defendants deny the allegations contained in paragraph 112 of the Complaint.

113. Defendants deny the allegations contained in paragraph 113 of the Complaint.

114. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 114 of the Complaint and therefore deny the same.

115. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 115 of the Complaint and therefore deny the same.

116. Defendants deny the allegations contained in paragraph 116 of the Complaint.

117. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 117 of the Complaint and therefore deny the same.

118. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 118 of the Complaint and therefore deny the same.

119. The emails speak for themselves and any characterization inconsistent therewith is denied.

**HIGHLY CONFIDENTIAL**

120.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 120 of the Complaint because it is unclear what "miscellaneous confidential information" means as referenced in this paragraph and therefore deny the same.

121.    Defendants deny the allegations contained in paragraph 121 of the Complaint.

122.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations regarding MagAssist's representations regarding its business and therefore deny these allegations. Defendants deny the remaining allegations contained in paragraph 122 of the Complaint.

123.    Defendants deny the allegations contained in paragraph 123 of the Complaint.

124.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 124 of the Complaint and therefore deny the same.

125.    Defendants deny the allegations contained in paragraph 125 of the Complaint.

126.    Defendants deny the allegations contained in paragraph 126 of the Complaint.

127.    Defendants deny the allegations contained in paragraph 127 of the Complaint.

128.    Defendants deny the allegations contained in paragraph 128 of the Complaint.

129.    Paragraph 129 of the Complaint sets forth a legal conclusion to which no response is required. To the extent that paragraph 129 sets forth factual allegations, such allegations are denied.

130.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 130 of the Complaint and therefore deny the same.

131.    Defendants deny the allegations contained in paragraph 131 of the Complaint.

132.    Defendants deny the allegations contained in paragraph 132 of the Complaint.

HIGHLY CONFIDENTIAL

133.     Defendants deny the allegations contained in paragraph 133 of the Complaint.

134.     Defendants deny the allegations contained in paragraph 134 of the Complaint.

135.     Defendants deny the allegations contained in paragraph 135 of the Complaint.

136.     Defendants admit that Lungshield Holding is the sole shareholder of Lungshield Suzhou.  Defendants deny the remaining allegations of paragraph 136 of the Complaint.

137.     The CSA speaks for itself, and any characterization inconsistent therewith is denied. Should paragraph 137 be deemed to contain allegations directed to Defendants, Defendants deny those allegations.

138.     Defendants deny the allegations contained in paragraph 138 of Complaint.

139.      Defendants deny the allegations contained in paragraph 139 of Complaint.

140.     The CSA speaks for itself, and any characterization inconsistent therewith is denied. To the extent that paragraph 140 sets forth factual allegations, such allegations are denied.

141.     Defendants deny the allegations contained in paragraph 141 of Complaint.

142.     Defendants deny the allegations contained in paragraph 142 of Complaint.

143.     Defendants deny that they shared any confidential information of Abiomed with MagAssist.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 143 of the Complaint and therefore deny the same.

144.     Defendants deny that they shared any confidential information of Abiomed with MagAssist.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 144 of the Complaint and therefore deny the same.

145.     Defendants deny the allegations contained in paragraph 145 of the Complaint.

**HIGHLY CONFIDENTIAL**

146.    The document speaks for itself, and any characterization inconsistent therewith is denied.

147.    The document speaks for itself, and any characterization inconsistent therewith is denied.

148.    The document speaks for itself, and any characterization inconsistent therewith is denied.

149.    Defendants deny that they shared any confidential information of Abiomed with MagAssist.  The SOW speaks for itself, and any characterization inconsistent therewith is denied. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 149 of the Complaint and therefore deny the same.

150.    Defendants deny that they shared any confidential information of Abiomed with MagAssist. Defendants admit that Enmodes conducted research on the design of the pump housing liner.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 150 of the Complaint and therefore deny the same.

151.    Defendants deny that they shared any confidential information of Abiomed with MagAssist.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 151 of the Complaint and therefore deny the same.

152.    Defendants deny that they shared any confidential information of Abiomed with MagAssist. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 152 of the Complaint and therefore deny the same.

**HIGHLY CONFIDENTIAL**

153.    Defendants deny that they shared any confidential information of Abiomed with MagAssist. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 153 of the Complaint and therefore deny the same.

154.    Defendants deny the allegations contained in paragraph 154 of the Complaint.

155.    Defendants deny that they shared any confidential information of Abiomed with MagAssist and on that basis deny the allegations contained in paragraph 155 of the Complaint. To the extent that paragraph 155 asserts a legal conclusion, no response is necessary.

156.    Defendants deny that they shared any confidential information of Abiomed with MagAssist and on that basis deny the allegations contained in paragraph 156 of the Complaint. To the extent that paragraph 156 asserts a legal conclusion, no response is necessary.

157.    Defendants deny the allegations contained in paragraph 157 of the Complaint.

158.    Defendants deny that they shared any confidential information of Abiomed with MagAssist and on that basis deny the allegations contained in paragraph 158 of the Complaint. To the extent that paragraph 158 asserts a legal conclusion, no response is necessary.

159.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 159 of the Complaint and therefore deny the same.

160.    Defendants deny the allegations contained in paragraph 160 of the Complaint.

161.    Defendants deny the allegations contained in paragraph 161 of the Complaint.

**COUNT I**

162.    Defendants restate their responses to the allegations contained in paragraphs 1-161 as if fully set forth herein.

**HIGHLY CONFIDENTIAL**

163.    The CSA speaks for itself, and any characterization inconsistent therewith is denied. To the extent that paragraph 163 sets forth factual allegations, such allegations are denied.

164.    Defendants deny the allegations contained in paragraph 164 of the Complaint.

165.    The CSA speaks for itself, and any characterization inconsistent therewith is denied. Defendants deny the remaining allegations contained in paragraph 165 of the Complaint.

166.    Defendants deny that it has breached the CSA in any way. Defendants deny the remaining allegations contained in paragraph 166 of the Complaint.

167.    Defendants deny the allegations contained in paragraph 167 of the Complaint.

168.    Defendants deny the allegations contained in paragraph 168 of the Complaint.

169.    Defendants deny the allegations contained in paragraph 169 of the Complaint.

**COUNT II**

170.    Defendants restate their responses to the allegations contained in paragraphs 1-169 as if fully set forth herein.

171.    The CSA speaks for itself, and any characterization inconsistent therewith is denied. To the extent that paragraph 171 sets forth factual allegations, such allegations are denied.

172.    Defendants deny the allegations contained in paragraph 172 of the Complaint.

173.    The CSA speaks for itself, and any characterization inconsistent therewith is denied. Defendants deny the remaining allegations contained in paragraph 173 of the Complaint.

174.    Defendants deny that it has breached the CSA in any way. Defendants deny the remaining allegations contained in paragraph 174 of the Complaint.

175.    Defendants deny the allegations contained in paragraph 175 of the Complaint.

176.    Defendants deny the allegations contained in paragraph 176 of the Complaint.

177.    Defendants deny the allegations contained in paragraph 177 of the Complaint.

**HIGHLY CONFIDENTIAL**

## COUNT III

178.    Defendants restate their responses to the allegations contained in paragraphs 1-177 as if fully set forth herein.

179.    The CSA speaks for itself, and any characterization inconsistent therewith is denied. To the extent that paragraph 179 sets forth factual allegations, such allegations are denied.

180.    Defendants deny the allegations contained in paragraph 180 of the Complaint.

181.    The CSA speaks for itself, and any characterization inconsistent therewith is denied. Defendants deny the remaining allegations contained in paragraph 181 of the Complaint.

182.    Defendants deny that it has breached the CSA in any way. Defendants deny the remaining allegations contained in paragraph 182 of the Complaint.

183.    Defendants deny the allegations contained in paragraph 183 of the Complaint.

184.    Defendants deny the allegations contained in paragraph 184 of the Complaint.

185.    Defendants deny the allegations contained in paragraph 185 of the Complaint.

## COUNT IV

186.    Defendants restate their responses to the allegations contained in paragraphs 1-185 as if fully set forth herein.

187.    Defendants deny the allegations contained in paragraph 187 of the Complaint.

188.    Defendants deny the allegations contained in paragraph 188 of the Complaint.

189.    Defendants deny the allegations contained in paragraph 189 of the Complaint.

190.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 190 of the Complaint and therefore deny the same.

**HIGHLY CONFIDENTIAL**

191.     Paragraph 191 of the Complaint sets forth a legal conclusion to which no response is required. To the extent that paragraph 191 sets forth factual allegations, such allegations are denied.

192.     Paragraph 192 of the Complaint sets forth a legal conclusion to which no response is required. To the extent that paragraph 192 sets forth factual allegations, such allegations are denied.

193.     Defendants deny the allegations contained in paragraph 193 of the Complaint.

194.     Defendants deny the allegations contained in paragraph 194 of the Complaint.

195.     Defendants deny the allegations contained in paragraph 195 of the Complaint.

196.     Defendants deny the allegations contained in paragraph 196 of the Complaint.

**COUNT V**

197.     Defendants restate their responses to the allegations contained in paragraphs 1-196 as if fully set forth herein.

198.     Defendants deny the allegations contained in paragraph 198 of the Complaint.

199.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 199 of the Complaint and therefore deny the same.

200.     Defendants deny the allegations contained in paragraph 200 of the Complaint.

201.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 201 of the Complaint and therefore deny the same.

**HIGHLY CONFIDENTIAL**

202.     Paragraph 202 of the Complaint sets forth a legal conclusion to which no response is required. To the extent that paragraph 202 sets forth factual allegations, such allegations are denied.

203.     Paragraph 203 of the Complaint sets forth a legal conclusion to which no response is required. To the extent that paragraph 203 sets forth factual allegations, such allegations are denied.

204.     Defendants deny the allegations contained in paragraph 204 of the Complaint.

205.     Defendants deny the allegations contained in paragraph 205 of the Complaint.

206.     Defendants deny the allegations contained in paragraph 206 of the Complaint.

207.     Defendants deny the allegations contained in paragraph 204 of the Complaint.

**COUNT VI**

208.     Defendants restate their responses to the allegations contained in paragraphs 1-207 as if fully set forth herein.

209.     Defendants deny the allegations contained in paragraph 209 of the Complaint.

210.     Paragraph 210 of the Complaint sets forth a legal conclusion to which no response is required. To the extent that paragraph 210 sets forth factual allegations, such allegations are denied.

211.     Paragraph 211 of the Complaint sets forth a legal conclusion to which no response is required. To the extent that paragraph 211 sets forth factual allegations, such allegations are denied.

212.     Defendants deny the allegations contained in paragraph 212 of the Complaint.

213.     Defendants deny the allegations contained in paragraph 213 of the Complaint.

214.     Defendants deny the allegations contained in paragraph 214 of the Complaint.

**HIGHLY CONFIDENTIAL**

215.    Defendants deny the allegations contained in paragraph 215 of the Complaint.

**COUNT VII**

216.    Defendants restate their responses to the allegations contained in paragraphs 1-215 as if fully set forth herein.

217.    Defendants deny the allegations contained in paragraph 217 of the Complaint.

218.    Defendants deny the allegations contained in paragraph 218 of the Complaint.

219.    Defendants deny the allegations contained in paragraph 219 of the Complaint.

220.    Defendants deny the allegations contained in paragraph 220 of the Complaint.

221.    Defendants deny the allegations contained in paragraph 221 of the Complaint.

222.    Defendants deny the allegations contained in paragraph 222 of the Complaint.

223.    Paragraph 223 of the Complaint sets forth a legal conclusion to which no response is required. To the extent that paragraph 223 sets forth factual allegations, such allegations are denied.

224.    Defendants deny the allegations contained in paragraph 224 of the Complaint.

225.    Defendants deny the allegations contained in paragraph 225 of the Complaint.

226.    Defendants deny the allegations contained in paragraph 226 of the Complaint.

**COUNT VIII**

227.    Defendants restate their responses to the allegations contained in paragraphs 1-226 as if fully set forth herein.

228.    Defendants deny the allegations contained in paragraph 228 of the Complaint.

229.    Defendants deny the allegations contained in paragraph 229 of the Complaint.

230.    Defendants deny the allegations contained in paragraph 230 of the Complaint.

231.    Defendants deny the allegations contained in paragraph 231 of the Complaint.

**HIGHLY CONFIDENTIAL**

## RESPONSE TO PLAINTIFFS' PRAYER FOR RELIEF

**WHEREFORE**, Defendants deny that Plaintiffs are entitled to any relief from Defendants, including and not limited to the relief Plaintiffs seek in the Prayer for Relief. Defendants request that the Court find in Defendants' favor. The Defendants request that the Court deny Plaintiffs their relief sought.

## DEMAND FOR JURY TRIAL

Defendants and Counterclaimants demand a jury trial of all issues that are triable to a jury.

## DEFENDANTS' AFFIRMATIVE AND OTHER DEFENSES

Defendants undertake the burden of proof only as to those defenses deemed affirmative defenses by law, regardless of how such defenses are identified below. Defendants expressly reserve the right to plead additional affirmative and other defenses should any such defenses be revealed by discovery in this case or any other means. For its affirmative and other defenses, Defendants repeat and reallege Counterclaim Paragraphs 1-160 below, and further state as follows:

### FIRST AFFIRMATIVE DEFENSE: FAILURE TO STATE A CLAIM

Abiomed fails to state a claim upon which relief can be granted in the Complaint.

### SECOND AFFIRMATIVE DEFENSE: SET OFF

Abiomed is barred from any legal or equitable relief under each of the purported causes of action in the Complaint to the extent Enmodes has offsetting claim(s), and any liability to Abiomed, which Enmodes hereby denies, must be reduced under the doctrines of offset, setoff and/or recoupment.

### THIRD AFFIRMATIVE DEFENSE: UNCLEAN HANDS

Abiomed's claims are barred in whole or in part by the doctrines of unclean hands.

HIGHLY CONFIDENTIAL

### FOURTH AFFIRMATIVE DEFENSE: FAILURE TO MITIGATE DAMAGES

Abiomed has failed to exercise reasonable care and diligence to mitigate their alleged claims and damages and, therefore, Abiomed is barred from any and all recovery sought herein as against Enmodes.

### FIFTH AFFIRMATIVE DEFENSE: PRIOR PENDING ACTION

Abiomed's claims in the Complaint are barred by the prior pending action doctrine based on the parallel litigation it filed in Germany.

### SIXTH AFFIRMATIVE DEFENSE: FAILURE TO JOIN AND INDISPENSABLE PARTY

Abiomed's claims in the Complaint are barred due to its failure to join MagAssist as a necessary and/or indispensable party.

### SEVENTH AFFIRMATIVE DEFENSE: DAMAGES WERE A RESULT OF UNRELATED, PRE-EXISTING, OR SUBSEQUENT CONDITIONS UNRELATED TO DEFENDANTS' CONDUCT

Abiomed is not entitled to any legal or equitable relief sought for any claim in the Complaint because any alleged action by Enmodes was performed in good faith and in accordance with fair dealings.

### EIGHTH AFFIRMATIVE DEFENSE: BREACH OF CONTRACT

Abiomed is barred from any legal or equitable relief for its breach of contract claims due to Abiomed's own breach of the CSA.

**HIGHLY CONFIDENTIAL**

### NINTH AFFIRMATIVE DEFENSE: BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING UNDER

Abiomed's claims for breach of contract are barred because Abiomed failed to meet its protective duties under German Civil Code, i.e., the Bürgerliches Gesetzbuch ("BGB") Section 241.

### TENTH AFFIRMATIVE DEFENSE: EXTRATERRITORIALITY DOCTRINE

Abiomed's claims in the Complaint are barred due to the extraterritoriality doctrine.

### ELEVENTH AFFIRMATIVE DEFENSE: NO USE OF CONFIDENTIAL, PROPRIETARY, OR TRADE SECRET INFORMATION

Abiomed's claims in the Complaint are barred because Enmodes has not used, and is not using, any of Abiomed's confidential, proprietary, and/or alleged trade secret information.

### TWELFTH AFFIRMATIVE DEFENSE: INDEPENDENT DEVELOPMENT

Abiomed's claims in the Complaint are barred because MagAssist independently developed all technology alleged to be misappropriated in the Complaint.

### THIRTEENTH AFFIRMATIVE DEFENSE: NO CONFIDENTIAL, PROPRIETARY, OR TRADE SECRET INFORMATION

Abiomed's claims in the Complaint are barred because the information on which those claims are based was readily ascertainable by proper means and was/is not confidential, proprietary, or trade secret information.

### FOURTEENTH AFFIRMATIVE DEFENSE: NO REASONABLE STEPS TO PROTECT TRADE SECRETS

Abiomed's claims in the Complaint alleging misappropriation of trade secrets are barred because Abiomed did not take reasonable steps to protect its alleged trade secrets.

HIGHLY CONFIDENTIAL

### FIFTEENTH AFFIRMATIVE DEFENSE: ABSENCE OF IMPROPER MEANS

Abiomed's claims in the Complaint alleging misappropriation of trade secrets are barred because Enmodes did not obtain any alleged trade secrets, proprietary information, or confidential information by improper means.

### SIXTEENTH AFFIRMATIVE DEFENSE: LACK OF INDEPENENT ECONOMIC VALUE

Abiomed's claims in the Complaint alleging misappropriation of trade secrets are barred because Abiomed's alleged trade secrets or confidential information lack independent economic value.

### SEVENTEENTH AFFIRMATIVE DEFENSE: CLAIMS BROUGHT IN BAD FAITH

Abiomed's claims in the Complaint are barred because they are frivolous and were brought in bad faith, for an improper purpose, and/or without reasonable inquiry.

### EIGHTEENTH AFFIRMATIVE DEFENSE: LACK OF DAMAGE/HARM

Abiomed's claims in the Complaint are barred because it has not suffered any damage as a result of the allegations in the Complaint. In the alternative, if Abiomed has been harmed as alleged and denied, the harm was caused in whole or in part by Abiomed's own actions, or inactions, and Abiomed is therefore not entitled to relief.

### NINETEENTH AFFIRMATIVE DEFENSE: NO PROOF OF CAUSATION

Abiomed's claims in the Complaint are barred, in whole or in part, because Abiomed cannot establish that Enmodes caused any harm for which Abiomed now seeks redress.

HIGHLY CONFIDENTIAL

## TWENTIETH AFFIRMATIVE DEFENSE: NO INJUNCTIVE RELIEF

Abiomed is not entitled to injunctive relief because any injury to Abiomed is not irreparable, Abiomed has an adequate remedy at law, the balance of hardships does not warrant a remedy in equity, and the public interest would ne disserved by an injunction.

## TWENTY-FIRST AFFIRMATIVE DEFENSE: NO ATTORNEYS' FEES

Abiomed is not entitled to attorneys' fees for any purported cause of action in the Complaint.

## TWENTY-SECOND AFFIRMATIVE DEFENSE: NO PUNITIVE DAMAGES

Abiomed is not entitled to punitive damages for any purported cause of action in the Complaint.

## RESERVATION OF RIGHTS

Defendants reserve the right to add defenses or amend the existing defenses.

## COUNTERCLAIMS

Counterclaim-Plaintiffs Enmodes GmbH and Tim Kaufmann (collectively, "Enmodes" or "Counterclaim-Plaintiffs"), through their attorneys, based upon personal knowledge, investigation, information and belief, hereby bring this action against Counterclaim-Defendants Abiomed Inc. and Abiomed Europe GmbH (collectively, "Abiomed" or "Counterclaim-Defendants"), alleging as follows:

## PRELIMINARY STATEMENT

1.      This is an action to recover treble damages, costs of suit, and reasonable attorneys' fees for Abiomed's violations of Section 2 of the Sherman Act, 15 U.S.C. § 2 and Mass. Gen.

HIGHLY CONFIDENTIAL

Laws Ch. 93 Section 5, breach of contract, tortious interference, commercial disparagement, and deceptive and unfair trade practices.

## PARTIES

2.     Counterclaim-Plaintiff Enmodes GmbH is a German limited liability company organized under the laws of Germany with a principal place of business at Wilhemstrasse 38, 52070, Aachen, Germany.

3.     Counterclaim-Plaintiff Tim Kaufmann is a German national who resides in Aachen, Germany.

4.     Counterclaim-Defendant Abiomed, Inc. is a corporation organized under the laws of Delaware with a principal place of business at 22 Cherry Hill Dr., Danvers, MA 01923.

5.     Counterclaim-Defendant Abiomed Europe GmbH is a German limited liability company organized under the laws of Germany with a principal place of business at Neuenhofer Weg 3, 52074 Aachen, Germany.

## JURISDICTION AND VENUE

6.     This court has original jurisdiction over the subject matter of these counterclaims pursuant to 28 U.S.C. §§ 1331 and 1337.  This court has supplemental jurisdiction over the subject matter of these counterclaims pursuant to 28 U.S.C. §1367(a).

7.     This court has personal jurisdiction over Counterclaim-Defendants Abiomed, Inc. and Abiomed Europe GmbH based on their submission to this Court's jurisdiction in filing their Complaint.

8.     Venue is proper in this Court under 15 U.S.C. § 22 because Counterclaim-Defendant Abiomed Inc. is an inhabitant of this District and because Counterclaim-Defendants Abiomed Inc. and Abiomed Europe GmbH are found or transact business in this District.

HIGHLY CONFIDENTIAL

9.      Venue is also proper under 28 U.S.C. § 1391.

## INTERSTATE COMMERCE

10.     The Impella products at issue in this case are sold in interstate commerce, and the unlawful activities alleged in this Complaint have occurred in, and have had a substantial effect upon, interstate commerce.

## STATEMENT OF FACTS

### Enmodes GmbH and Tim Kaufmann

11.     After completing his Ph.D at the University of Aachen's Department of Cardiovascular Engineering, Dr. Kaufmann founded Enmodes GmbH in 2011 to offer exceptional expertise in simulation science. Since then, Enmodes GmbH has grown to more than 50 employees, becoming a medical technology research and development powerhouse.

12.     Enmodes GmbH is a globally active developer for medical products with a focus on cardiovascular circulatory support systems. It has successfully completed more than 70 projects with leading industrial partners worldwide.

### Abiomed Inc. and Abiomed Europe GmbH

13.     Abiomed Inc. is a medical device technology company that develops and manufactures medical devices with a focus on temporary external and implantable mechanical circulatory support devices.

14.     Abiomed Europe GmbH is a wholly-owned subsidiary of Abiomed R&D, Inc., which is a wholly-owned subsidiary of Abiomed, Inc.

15.      Although Abiomed and Enmodes GmbH have a longstanding history of working together, they are also competitors.

16.      Thorsten Siess is the managing director and chief technical officer of Abiomed Europe GmbH.  Dr. Siess is also the chief technical officer of Abiomed Inc.

17.      Dr. Siess and Dr. Kaufmann became personally acquainted through academic conferences long before Abiomed and Enmodes began working together.

*Abiomed's Impella and Its Market*

18.      Abiomed, Inc. and Abiomed Europe GmbH make and market the Impella line of heart catheterization pumps (collectively, the "Impella").

19.      The Impella allows the heart to rest and recover by temporarily assisting the pumping function of the heart to efficiently deliver blood and oxygen to the entire body. The Impella includes a catheter that is guided to one of the heart's two ventricles. Once in a ventricle, a pump with an electric motor in the catheter moves about 2.5-5 liters of blood per minute to the body to stabilize blood flow and unload that ventricle. A console connected by cable to the inserted pump is used to monitor blood flow and provide command and control functions.

20.      The catheter is typically inserted into an artery (typically the axillary or femoral artery) through minimally invasive techniques, though the Impella may also be inserted during open surgery. The Impella must be used in a hospital, whether during surgery or recovery, and must be removed before the patient leaves.

21.      The first Impella product received FDA approval in 2008. Today, according to Abiomed's website available at https://www.abiomed.com/patients-and-caregivers/about-impella, "Impella is the only U.S. FDA-approved percutaneous heart pump technology indicated for patients with severe coronary artery disease requiring high-risk PCI or AMI cardiogenic shock."

**HIGHLY CONFIDENTIAL**

22.     Categorically, the Impella is a ventricular assistance device ("VAD") in that it provides support to one of the heart's ventricles. The Impella is a different product and provides different advantages than conventional VADs.

23.     Some conventional VADs are large, external pumps that circulate the patient's blood. These pumps sit outside the body, pump the blood out of the body, and recirculate the blood through the body. In other words, the blood is entirely removed from the body, unlike with the Impella. The patient has no mobility while using a large, external pump. A patient would not be given a large, external pump in situations that call for an Impella, or vice versa.

24.     Another type of conventional VAD is a surgically-implanted pump. Surgically-implanted pumps are installed in the body near the heart during open-heart surgery. A surgically-implanted pump is typically a large implant and assists the heart by providing an alternative route for some of the blood flow through the heart. A controller and external batteries are carried by the patient and connected to the pump via a skin entry site maintained for this purpose. These surgically-implanted pumps, which require open surgery and reduce patient mobility due to the need to carry external accessories, are vastly different than the Impella. A patient would not be given a surgically-implanted pump in situations that call for an Impella, or vice versa.

25.     An intra-aortic balloon pump (IABP) is another known device first introduced in the 1960s. A balloon catheter is inserted through an artery into the heart's aorta, where the balloon is inflated and deflated to assist blood flow at a rate of about 0.5-1 liter/minute. An IABP is not a VAD as it is placed in the aorta, and is typically seen as an inferior solution to an Impella, especially in cases where the left or right ventricle requires additional assistance with blood flow.

26.     Abiomed markets the Impella as an improvement to IABP devices. According to Abiomed's          website          available          at          https://www.abiomed.com/patients-and-

caregivers/blog/differences-between-the-impella-heart-pump-and-the-intra-aortic-balloon-pump,

"The Impella heart pump has fewer adverse effects than the IABP" and "Patients supported with

the Impella heart pump have fewer repeated hospital readmissions compared to patients supported

with the IABP."

27.     None of the conventional VADs or IABPs discussed above are substitutable for an

Impella. The Impella has distinct use-cases compared to large, external pumps, surgically-

implanted pumps, and IABPs.

28.     The Impella has its own unique use cases when compared to VADs or IABPs.

29.     Upon information and belief, at the time of the filing of the Complaint by Abiomed,

the Impella was the only heart catheterization pump that is indicated by the US FDA for patients

with severe coronary artery disease requiring high-risk PCI or AMI cardiogenic shock.

30.     Even if other products (such as conventional VADs or IABPs) could obtain a

similar indication to the Impella, they would not provide the same clinical benefit as the Impella.

31.     Upon information and belief, at the time of the filing of the Complaint by Abiomed,

the Impella was the only product in its market, both in the U.S. or worldwide.

32.     Abiomed sells the Impella in North America, including the U.S. and Canada,

Europe, and Japan.

33.     As asserted in paragraph 159 of the Complaint, Abiomed plans to commercialize

the Impella in China and claims that any competing products from China "present a commercial

threat to Abiomed."

34.     At the time of the filing of the Complaint by Abiomed, Abiomed was the only

company selling heart catheterization pumps that are indicated by the US FDA for patients with

**HIGHLY CONFIDENTIAL**

severe coronary artery disease requiring high-risk PCI or AMI cardiogenic shock. Abiomed has market power in the U.S. and worldwide for the Impella.

35.     Abiomed, the only company selling heart catheterization pumps that are indicated by the US FDA for patients with severe coronary artery disease requiring high-risk PCI or AMI cardiogenic shock, has monopoly power in the U.S. and worldwide for the Impella.

***Abiomed and Enmodes GmbH Enter a Development License Agreement***

36.     Enmodes GmbH and Abiomed Europe GmbH entered a Development and License Agreement ("2017 DLA"), effective December 1, 2017.

37.     Section 13.2 of the 2017 DLA provides that ███████████████████████
███████████████████████████████████████████████████
█████████████████████████████

***Abiomed and Enmodes GmbH Enter a Consulting Services Agreement***

38.     Enmodes GmbH and Abiomed Europe GmbH entered a Consulting Services Agreement ("CSA"), effective August 1, 2020.

39.     During negotiation of the CSA, Dr. Kaufmann and Dr. Siess had many conversations, either face-to-face, by text message, or email.  During these conversations, Dr. Siess acknowledged awareness of Dr. Kaufmann and Enmodes doing development business in China, including ownership of a Chinese entity that was exploring the Chinese market, and were nevertheless still willing to enter into the CSA with Enmodes.

40.     Section 3 of the CSA provides that ███████████████████████████
████████████████████████████████████████████████████
██████████████████████████

**HIGHLY CONFIDENTIAL**

41.     Section 13 of the CSA provides that ████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████

*Abiomed Wrongfully Terminates the CSA*

42.     On July 18, 2022, German counsel for Abiomed Europe GmbH sent a letter to Enmodes GmbH, terminating the Consulting Service Agreement and the 2017 Development and License Agreement.  As a basis for the termination, the letter stated that (translated to English) "there is a high probability that Enmodes GmbH has disclosed our client's business secrets to a direct Chinese competitor."

43.     As of the date of termination, Abiomed Europe GmbH owed approximately €560,000 for work completed by Enmodes GmbH pursuant to the Consulting Services Agreement. In addition, Enmodes GmbH expected to earn another €4.8 million for work to be completed under the Consulting Services Agreement.

*Court-Appointed Expert in Germany Finds Abiomed Has No Trade Secrets*

44.     On July 1, 2022, Abiomed GmbH filed suit in the Regional Court of Cologne, Germany alleging trade secret misappropriation.  On July 11, 2022, German authorities seized more than 55GB of electronically-stored files from Enmodes GmbH and Dr. Kaufmann, which data was then reviewed by experts for evidence of the alleged trade secret misappropriation.

45.     Enmodes GmbH and Dr. Kaufmann have consistently denied that they have engaged in any misappropriation of Abiomed's alleged trade secrets.  In August 2023, the expert assigned to analyze the seized data for evidence of trade secret misappropriation issued an opinion.

**HIGHLY CONFIDENTIAL**

46.    Notably, the expert opined that Abiomed's purported trade secrets are not trade secrets because these innovations are already known in the field.

47.    The expert also found that there was (translated) "no passing on of the findings by the company Enmodes GmbH" to anyone.

### Abiomed's Actions Against Enmodes

48.    As a self-described "world leader in heart pump technology" Abiomed knew or should have known that its asserted trade secrets did not qualify for trade secret protection. Nevertheless, despite having no evidence of wrongful action by Enmodes GmbH or Dr. Kaufmann, Abiomed commenced a series of actions to cause severe economic and reputational harm to Enmodes GmbH and Dr. Kaufmann.

49.    On October 17, 2022, Abiomed Inc. and Abiomed Europe GmbH filed the instant action in Massachusetts Superior Court for Essex County, serving the Complaint on Enmodes GmbH and Dr. Kaufmann in Germany on December 12, 2022.   Enmodes GmbH and Dr. Kaufmann filed a Notice of Removal on January 13, 2023.

50.    Upon information and belief, on or about August 3, 2022, Abiomed Inc., Abiomed Europe GmbH, or those working on their behalf filed a criminal complaint in Germany against Dr. Kaufmann, resulting in commencement of a penal action by German authorities.

51.    Upon information and belief, in the fall of 2022, Abiomed Inc., Abiomed Europe GmbH, or those working on their behalf filed a complaint against Enmodes GmbH and/or Dr. Kaufmann with the German Ministry of Economic Affairs and Climate Action.

52.    Upon information and belief, in the fall of 2022, Abiomed Inc., Abiomed Europe GmbH, or those working on their behalf filed a complaint against Enmodes GmbH and/or Dr.

**HIGHLY CONFIDENTIAL**

Kaufmann with the German Ministry of Finance, resulting in a tax audit of Enmodes GmbH that occurred in January 2023.

53.     Upon information and belief, Abiomed has brought no action against MagAssist based upon any assertion of the alleged use of misappropriated Abiomed trade secrets.

54.     As a result of Abiomed's above-described scheme to harass Enmodes GmbH and Dr. Kaufmann through these legal complaints, the Counterclaim-Plaintiffs have spent considerable time and resources defending themselves in multiple different actions spanning two continents, diverting resources from their business and slowing progress on their research.

55.     Abiomed's actions against Enmodes and Dr. Kaufmann did not stop with filing meritless complaints.  Upon information and belief, Abiomed Inc., Abiomed Europe GmbH, or those working on their behalf contacted suppliers of Enmodes GmbH and persuaded the suppliers to stop working with Enmodes GmbH.

56.     For example, Enmodes GmbH had been working with the KU Leuven animal laboratory for approximately seven years, during which time KU Leuven provided animal trials to Enmodes GmbH, worked on joint research grants and published together.  Abiomed, also a customer of KU Leuven animal laboratory, was aware of the relationship between Enmodes GmbH and KU Leuven and even participated in joint animal trials.  In late 2022 KU Leuven informed Enmodes GmbH that it could no longer offer animal trials because it would be a conflict of interest due to KU Leuven's relationship with Abiomed.  Upon information and belief, Abiomed pressured KU Leuven to break its relationship with Enmodes.  Enmodes GmbH was forced to vet, identify, and contract with a new supplier that is more expensive for animal trials.

57.     As another example, Enmodes GmbH had been communicating with ELKEM for over one year regarding development of a novel medical-grade silicone.  Enmodes GmbH and

ELKEM had worked together on several projects in prior years and ELKEM had expressed interest in working together on the novel medical-grade silicone project.  Upon information and belief, Abiomed was also involved in a project with ELKEM and knew about Enmodes GmbH's prospective new medical-grade silicone project with ELKEM.  In late 2022, ELKEM suddenly dropped contact with Enmodes GmbH. After inquiry, ELKEM informed Enmodes GmbH that it was no longer interested in developing together. Upon information and belief, Abiomed pressured ELKEM to break its relationship with Enmodes.  Enmodes GmbH has not yet found a new supplier to replace ELKEM.

58.     Upon information and belief, Abiomed Inc., Abiomed Europe GmbH, or those working on their behalf also contacted prospective suppliers of Enmodes GmbH and persuaded the suppliers not to work with Enmodes GmbH.

59.     For example, Enmodes GmbH had been communicating with Faulhaber, a company that develops high-end motors for blood pumps.  Upon information and belief, Faulhaber is also a supplier to Abiomed.  Faulhaber initially stated that it was interested in developing a new motor with Enmodes GmbH.  Moreover, Faulhaber stated that its relationship with Abiomed would not limit it from working with Enmodes GmbH.  Suddenly, in late 2022 and after Abiomed wrongfully terminated the CSA, Faulhaber withdrew the offer to develop a new motor with Enmodes GmbH and indicated that it would not have capacity to work with Enmodes GmbH. Upon information and belief, Abiomed pressured Faulhaber not to enter into a relationship with Enmodes.

60.     The loss of Enmodes GmbH's supplier and prospective supplier relationships has resulted in a delay of Enmodes GmbH's development process and additional costs incurred by Enmodes GmbH.

**HIGHLY CONFIDENTIAL**

61.     Although Enmodes and Dr. Kaufmann were not aware at the time, Abiomed's actions to harm Enmodes began even before Abiomed wrongfully terminated the CSA. Despite its promises in the CSA and 2017 DLA not to solicit Enmodes GmbH employees, Abiomed persuaded Enmodes GmbH employees Dr. Fiete Böhning, Dr. Sasha Groß-Hardt, and Dr. Deepanshu Sodhani, to leave Enmodes GmbH and work at Abiomed Europe GmbH instead.   All three employees submitted their notice of termination to Enmodes on the same day, June 28, 2022 – approximately two weeks before Abiomed Europe GmbH sent its letter terminating the CSA and 2017 DLA.

62.     Dr. Böhning Dr. Groß-Hardt in particular were two of the longest-serving researchers at Enmodes, and their absence in combination with Dr. Sodhani has caused a loss of valuable know-how from the Enmodes team.

63.     Upon information and belief, Dr. Siess, on behalf of Counterclaim-Defendants, made statements about Dr. Kaufmann to damage the reputation of Dr. Kaufmann and Enmodes GmbH.   Specifically, in March 2023 Dr. Kaufmann spoke with his former Ph.D supervisor and learned that Dr. Siess had been telling people that "Tim Kaufmann is not to be trusted. He sends trade secrets to China."   This has resulted in damage to Dr. Kaufmann's personal and professional reputation.

***Enmodes' Delayed Entry Into The Market***

64.     Enmodes is developing new heart catheterization pumps that will treat patients with severe coronary artery disease requiring high-risk PCI or AMI cardiogenic shock, the same indications as are treated by the Impella.

65.     Enmodes' pumps will feature new technology that it has invested in developing.

**HIGHLY CONFIDENTIAL**

66.     For example, all components of the new Enmodes pumps are independently developed, including the rotor and motor, inlet and outlet areas, cannula/catheter and electric controller.

67.     Enmodes intends to introduce the Enmodes heart catheterization pump into the Chinese market.

68.     Upon information and belief, Abiomed perceives Enmodes as a potential competitor not only in China, but in Europe and the United States.

69.     Enmodes has always kept Abiomed informed of its progress. For example, in 2020, when Abiomed and Enmodes were jointly working on an external pump, Enmodes disclosed that it was also working on a separate external pump for China. In addition, when Enmodes decided it would develop a pump to treat patients with severe coronary artery disease requiring high-risk PCI or AMI cardiogenic shock, it proactively approached Abiomed's CTO to address any concerns.

70.     Nothing in the Abiomed-Enmodes agreement precludes Enmodes from developing and selling its own competing pump.  Dr. Siess acknowledged this fact in a conversation with Dr. Kaufmann on May 6, 2020.

71.     Upon information and belief, in response to its belief that Enmodes GmbH was a potential competitor for its Impella product, Abiomed (i) contacted at least one of Enmodes GmbH's suppliers and persuaded them to cease working with Enmodes GmbH; and (ii) filed multiple lawsuits intended to economically hamstring Enmodes, including this case based on spurious and unsupported allegations of trade secret misappropriation.

72.     These actions had anticompetitive and exclusionary effects.

73.     Several of Enmodes' suppliers terminated their relationship with Enmodes or refused to work with Enmodes because of Abiomed's interference.  As a result, Enmodes was

forced to expend time and effort locating, vetting, and qualifying new suppliers. In particular, the following suppliers terminated their relationship with Enmodes:  (i) KU Leuven, an animal study facility that was told by Abiomed they could not work with Enmodes; (ii) ELKEM, a medical grade silicone supplier for Abiomed and Enmodes that suddenly dropped contact with Enmodes; (iii) ODU, an electrical connector company that suddenly was no longer interested in working with Enmodes; and (iv) Faulhaber, a motor company that supplies both Abiomed and Enmodes, who suddenly refused to support Enmodes.

74.     In addition, Enmodes is required to expend management's efforts and significant capital on defending against Abiomed's baseless accusations in multiple jurisdictions instead of focusing on further development of its own products.

75.     Enmodes' development activities have been delayed as a result of Abiomed's actions. Since Enmodes' development is delayed, its receipt of necessary Chinese regulatory approvals to begin marketing and selling its products are delayed. Abiomed can make use of these delays to enter the Chinese market before Enmodes, extending its existing market power into China. The delays also postpone and/or prevent the release of the Enmodes' pump into the market, allowing Abiomed to maintain and protect its market power.

76.     Abiomed's actions caused and are continuing to cause direct harm to Enmodes by delaying Enmodes' entry into relevant (its target) markets,

77.     Abiomed is intending to delay or prevent Enmodes' entry into the market by its actions.

78.     Exclusion from a market by a monopolist or intended monopolist is the type of harm Congress sought to redress by enacting the Sherman Act.

79. Currently, it is estimated that Abiomed has successfully delayed Enmodes' entry into the marketplace by at least 3-6 months.

80. There is no risk of a duplicative recovery or complex apportionment of damages.

## COUNT ONE
## BREACH OF CONTRACT
## SECTIONS 3 AND 13 OF THE CSA; SECTION 13.2 OF THE 2017 DLA

81. Counterclaim-Plaintiffs repeat and reallege paragraphs 1-80 hereof, as if fully set forth herein.

82. The CSA and 2017 DLA are governed by German law.  Under German law, the agreements are valid and enforceable contracts binding upon Abiomed Europe GmbH and Enmodes GmbH.

83. Enmodes GmbH has performed its obligations under the CSA and 2017 DLA.

84. Section 13 of the CSA states █████████████████████████████ ██████████████████████████████████████████████████████ ████████████████████████████

85. Section 3 of the CSA █████████████████████████████████ ██████████████████████████████████████████████████████ ██████████████████████████████████████████████████████ ███████████████████████████

86. Section 13.2 of the 2017 DLA █████████████████████████ ██████████████████████████████████████████████████████ ███████████████████████████████

87. Abiomed Europe GmbH breached these obligations by at least ████████████ ████████████████████████████████████████████

HIGHLY CONFIDENTIAL

88.     To the extent the agreements are construed under German law, as required by the contracts, this is actionable under breach of protective duties based on § 241(2) of the German Civil Code, i.e., the *Bürgerliches Gesetzbuch* ("BGB") (German Civil Code), January 2, 2002, Federal Law Gazette (*Bundesgesetzblatt*) at 3515, last amended by Article 1 of the Act of 10 August 2021 (Federal Law Gazette I p. 3515), which gives rise to a damages claim under BGB § 826.  To the extent any portion of the agreements is interpreted under U.S. law, this is actionable as a breach of contract.

89.     Abiomed Europe GmbH's breaches have harmed and will continue to cause harm to Enmodes GmbH through the loss of its valuable employees, causing it to suffer the loss of money.  Enmodes GmbH continues to accumulate costs as it searches for suitable replacements.

90.     Accordingly, Counterclaim-Plaintiff Enmodes GmbH should be awarded damages in an amount to be determined at trial, an injunction against further breach, and other appropriate relief.

**COUNT TWO**
**BREACH OF CONTRACT**
**SECTION 4 OF THE CSA**

91.     Counterclaim-Plaintiffs repeat and reallege paragraphs 1-90 hereof, as if fully set forth herein.

92.     The CSA is governed by German law.  Under German law, the CSA is a valid and enforceable contract binding upon Abiomed Europe GmbH and Enmodes GmbH.

93.     Enmodes GmbH has performed its obligations under the CSA and SOW.

94.     Section 4 of the CSA provides that ████████████████████████
████████████████████████████████████████████████████

**HIGHLY CONFIDENTIAL**

████████████████████████████████████████████████████████

████████████████████████████████████████

95.     Abiomed Europe GmbH breached this obligation by stopping all payments to Enmodes GmbH as of July 18, 2022.

96.     To the extent the CSA is construed under German law, as required by the contract, this is actionable under breach of protective duties based on BGB §§ 241(2) and gives rise to a damages claim under BGB § 826.  To the extent any portion of the CSA is interpreted under U.S. law, this is actionable as breach of contract.

97.     Abiomed Europe GmbH's breach has harmed and will continue to cause harm to Enmodes GmbH through the loss of earned revenue and loss of expected profits.

98.     Accordingly, Counterclaim-Plaintiff Enmodes GmbH should be awarded damages in an amount to be determined at trial and other appropriate relief.

**COUNT THREE**
**BREACH OF CONTRACT**
**SECTION 2 OF THE SOW**

99.     Counterclaim-Plaintiffs repeat and reallege paragraphs 1-98 hereof, as if fully set forth herein.

100.     The SOW is governed by German law.  Under German law, the SOW is a valid and enforceable contract binding upon Abiomed Inc. and Enmodes GmbH.

101.     Enmodes GmbH has performed its obligations under the CSA and SOW.

102.     Section 2 of the SOW provides that ████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████

**HIGHLY CONFIDENTIAL**

103.    Counterclaim-Defendants breached this obligation by stopping all payments to Enmodes GmbH as of July 18, 2022.

104.    To the extent the CSA is construed under German law, as required by the contract, this is actionable under breach of protective duties based on BGB § 241(2), which gives rise to a damages claim under BGB § 826.  To the extent any portion of the CSA is interpreted under U.S. law, this is actionable as breach of contract.

105.    Counterclaim-Defendants' breaches have harmed and will continue to cause harm to Enmodes GmbH through the loss of earned revenue and loss of expected profits.

106.    Accordingly, Counterclaim-Plaintiff Enmodes GmbH should be awarded damages in an amount to be determined at trial and other appropriate relief.

**COUNT FOUR**
**TORTIOUS INTERFERENCE WITH CONTRACTUAL**
**RELATIONSHIP WITH SUPPLIERS**

107.    Counterclaim-Plaintiffs repeat and reallege paragraphs 1-106 hereof, as if fully set forth herein.

108.    Enmodes GmbH had longstanding contractual relationships with third-party suppliers.

109.    Counterclaim-Defendants had knowledge of Enmodes GmbH's relationship with certain suppliers.

110.    Counterclaim-Defendants intentionally persuaded at least one supplier to break its contract with Enmodes GmbH.

111.    Counterclaim-Defendants had the improper motive of causing harm to Enmodes GmbH.

HIGHLY CONFIDENTIAL

112.     Counterclaim-Defendants' actions have harmed and will continue to cause harm to Enmodes GmbH through the loss of valuable supplier relationships and delays in research.

113.     To the extent German law governs the claims under this Count, this is actionable under breach of protective duties based on BGB § 241(2), which gives rise to damages claims under BGB §§ 31, 280(1) and 826, and a violation of the rights of an established and operating business under BGB § 823(1). To the extent U.S. law governs the claims under this Count, this is actionable as tortious interference with a contractual relationship.

114.     Accordingly, Counterclaim-Plaintiff Enmodes GmbH should be awarded damages in an amount to be determined at trial, an injunction against further interference, and other appropriate relief.

## COUNT FIVE
## TORTIOUS INTERFERENCE WITH ADVANTAGEOUS BUSINESS RELATIONSHIPS

115.     Counterclaim-Plaintiffs repeat and reallege paragraphs 1-114 hereof, as if fully set forth herein.

116.     Enmodes GmbH reasonably expected to benefit from a business relationship with ELKEM and Faulhaber.

117.     Counterclaim-Defendants had knowledge of Enmodes GmbH's relationship with ELKEM and Faulhaber.

118.     Counterclaim-Defendants used the improper method of defamatory statements to intentionally persuade ELKEM and Faulhaber not to enter into the expected relationships with Enmodes GmbH.

119.     Counterclaim-Defendants had the improper motive of causing harm to Enmodes GmbH.

HIGHLY CONFIDENTIAL

120.    Counterclaim-Defendants' actions have harmed and will continue to cause harm to Enmodes GmbH through the loss of valuable prospective supplier relationships and delays in research.

121.    To the extent German law governs the claims under this Count, this is actionable under breach of protective duties based on BGB § 241(2), which gives rise to damages claims under BGB §§ 31, 280(1) and 826, and a violation of the rights of an established and operating business under BGB §§ 823(1) and 824. To the extent U.S. law governs the claims under this Count, this is actionable as tortious interference with a business relationship.

122.    Accordingly, Counterclaim-Plaintiff Enmodes GmbH should be awarded damages in an amount to be determined at trial, an injunction against further interference, and other appropriate relief.

## COUNT SIX
## COMMON LAW COMMERCIAL DISPARAGEMENT

123.    Counterclaim-Plaintiffs repeat and reallege paragraphs 1-122 hereof, as if fully set forth herein.

124.    As described herein, Counterclaim-Defendants have made a series of false statements or implied false statements regarding Enmodes GmbH and/or Tim Kaufmann.

125.    Abiomed published these statements to third parties.

126.    Abiomed made these statements about Enmodes' products or services.

127.    These statements were made with malice against Enmodes.

128.    As a direct result of the malicious and false statements, Enmodes has sustained reputational loss and pecuniary loss in the form of lost contracts with vendors and suppliers.

**HIGHLY CONFIDENTIAL**

## COUNT SEVEN
## UNFAIR TRADE PRACTICES

129.    Counterclaim-Plaintiffs repeat and reallege paragraphs 1-128 hereof, as if fully set forth herein.

130.    Counterclaim-Defendants have engaged in a persistent course of conduct that disregards statues, rules and agreements that are designed to protect consumers and safeguard competition.

131.    By unlawfully depriving Enmodes GmbH of its relationships with contracted suppliers, employees, and prospective suppliers, as well as defaming Enmodes GmbH and Tim Kaufmann, Counterclaim-Defendants are engaging in unfair trade practices in violation of M.G.L. G.L. c. 93A § 2 and 11.

132.    As a result of Counterclaim-Defendants' unfair trade practices, Counterclaim-Plaintiffs have suffered a loss of money and reputation, and endured delays to its research.

133.    Accordingly, Counterclaim-Plaintiffs should be awarded damages in an amount to be determined at trial, an injunction against further unfair trade practices, and other appropriate relief.

## COUNT EIGHT
## COMMON LAW UNFAIR COMPETITION

134.    Counterclaim-Plaintiffs repeat and reallege paragraphs 1-133 hereof, as if fully set forth herein.

135.    Counterclaim-Defendants have engaged in a persistent course of conduct that disregards statues, rules and agreements that are designed to protect consumers and safeguard competition.

**HIGHLY CONFIDENTIAL**

136.    By unlawfully depriving Enmodes GmbH of its relationships with contracted suppliers, employees, and prospective suppliers, as well as defaming Enmodes GmbH and Tim Kaufmann, Counterclaim-Defendants are unlawfully and unfairly competing with Counterclaim-Plaintiffs.

137.    As a result of Counterclaim-Defendants' unfair trade practices, Counterclaim-Plaintiffs have suffered a loss of money and reputation, and endured delays to its research by diverting revenue and resources that would otherwise be used for their business.

138.    Accordingly, Counterclaim-Plaintiffs should be awarded damages in an amount to be determined at trial, an injunction against further unfair competition, and other appropriate relief.

**COUNT NINE**
**SHERMAN ACT SECTION 2,**
**MONOPOLIZATION OF THE HEART CATHETERIZATION PUMP MARKET**

139.    Counterclaim-Plaintiffs repeat and reallege paragraphs 1-138 hereof, as if fully set forth herein.

140.    Abiomed possesses monopoly power in the market, both in the U.S. and worldwide, for heart catheterization pumps that treat patients with severe coronary artery disease requiring high-risk PCI or AMI cardiogenic shock. At the time the Complaint was filed, the Impella was the only heart catheterization pump indicated by the US FDA for patients with severe coronary artery disease requiring high-risk PCI or AMI cardiogenic shock and is in a class of its own that provides benefits over other ventricle assist devices.

141.    Through its anticompetitive conduct described herein, Abiomed has willfully acquired and maintained its monopoly power in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2. Specifically, Abiomed wielded its monopoly power to encourage Enmodes' suppliers to cease working with Enmodes. In addition, Abiomed's lawsuits against Enmodes, including this

**HIGHLY CONFIDENTIAL**

one, include bad faith assertions of trade secret misappropriation. Each of these actions is intended to delay and/or exclude Enmodes from competing in the market.

142.    As a direct and proximate result of Abiomed's violations of the antitrust laws as alleged herein, (1) consumers have been deprived of the full benefits of competition in the relevant market, (2) Enmodes has been injured by its delay in entering the market in an amount to be determined at trial, and (3) Enmodes has suffered and is threatened with continued loss or damage to its business and property.

143.    Enmodes has no adequate remedy at law, and Abiomed's unlawful conduct will continue unless enjoined.

**COUNT TEN**
**SHERMAN ACT SECTION 2,**
**ATTEMPTED MONOPOLIZATION OF THE HEART**
**CATHETERIZATION PUMP MARKET**

144.    Counterclaim Plaintiffs repeat and reallege paragraphs 1-143 hereof, as if fully set forth herein.

145.    Abiomed has engaged in the anticompetitive conduct described herein.

146.    Abiomed acted with the specific intent to monopolize and harm competition in the market for heart catheterization pumps that treat patients with severe coronary artery disease requiring high-risk PCI or AMI cardiogenic shock, both in the U.S. and worldwide.

147.    There is a dangerous probability that Abiomed will succeed in obtaining a monopoly and harming competition in the heart catheterization pump market in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2.

148.    As a direct and proximate result of Abiomed's violations of the antitrust laws as alleged herein, (1) consumers have been deprived of the full benefits of competition in the relevant market, (2) Enmodes has been injured by its delay in entering the market in an amount to be

**HIGHLY CONFIDENTIAL**

determined at trial, and (3) Enmodes has suffered and is threatened with continued loss or damage to its business and property.

149.   Enmodes has no adequate remedy at law, and Abiomed's unlawful conduct will continue unless enjoined.

**COUNT ELEVEN
MASS. GEN. LAWS CH. 93 SECTION 5,
MONOPOLIZATION OF THE HEART CATHETERIZATION PUMP MARKET**

150.   Counterclaim-Plaintiffs repeat and reallege paragraphs 1-149 hereof, as if fully set forth herein.

151.   Abiomed possesses monopoly power in the market, both in the U.S. and worldwide, for heart catheterization pumps that treat patients with severe coronary artery disease requiring high-risk PCI or AMI cardiogenic shock. At the time of the filing of the Complaint, the Impella was the only heart catheterization pump indicated by the US FDA for patients with severe coronary artery disease requiring high-risk PCI or AMI cardiogenic shock and is in a class of its own that provides benefits over other ventricle assist devices.

152.   Through its anticompetitive conduct described herein, Abiomed has willfully acquired and maintained its monopoly power in violation of Mass. Gen. Laws ch. 93 § 5. Specifically, Abiomed wielded its monopoly power to encourage Enmodes' suppliers to cease working with Enmodes. In addition, Abiomed's lawsuits against Enmodes, including this one, include bad faith assertions of trade secret misappropriation. Each of these actions is intended to delay and/or exclude Enmodes from competing in the market.

153.   As a direct and proximate result of Abiomed's violations of the antitrust laws as alleged herein, (1) consumers have been deprived of the full benefits of competition in the relevant market, (2) Enmodes has been injured by its delay in entering the market in an amount to be

HIGHLY CONFIDENTIAL

determined at trial, and (3) Enmodes has suffered and is threatened with continued loss or damage to its business and property.

154.    Enmodes has no adequate remedy at law, and Abiomed's unlawful conduct will continue unless enjoined.

## COUNT TWELVE
### MASS. GEN. LAWS CH. 93 SECTION 5,
### ATTEMPTED MONOPOLIZATION OF THE HEART
### CATHETERIZATION PUMP MARKET

155.    Counterclaim Plaintiffs repeat and reallege paragraphs 1-154 hereof, as if fully set forth herein.

156.    Abiomed has engaged in the anticompetitive conduct described herein.

157.    Abiomed acted with the specific intent to monopolize and harm competition in the market for heart catheterization pumps that treat patients with severe coronary artery disease requiring high-risk PCI or AMI cardiogenic shock, both in the U.S. and worldwide.

158.    There is a dangerous probability that Abiomed will succeed in obtaining a monopoly and harming competition in the heart catheterization pump market in violation of Mass. Gen. Laws ch. 93 § 5.

159.    As a direct and proximate result of Abiomed's violations of the antitrust laws as alleged herein, (1) consumers have been deprived of the full benefits of competition in the relevant market, (2) Enmodes has been injured by its delay in entering the market in an amount to be determined at trial, and (3) Enmodes has suffered and is threatened with continued loss or damage to its business and property.

160.    Enmodes has no adequate remedy at law, and Abiomed's unlawful conduct will continue unless enjoined.

HIGHLY CONFIDENTIAL

## PRAYER FOR RELIEF

**WHEREFORE**, Counterclaim-Plaintiffs request judgment as follows:

A. That the Court declare, adjudge and decree that Abiomed has committed the violation of Sherman Act Section 2 alleged herein.

B. That Abiomed, its employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries and assigns, and all of those in active concert and participation with any of the foregoing persons or entities be enjoined and restrained preliminarily and permanently from continuing to violate Sherman Act Section 2 as described herein.

D. That the Court award damages sustained by Enmodes on the Counts in an amount to be determined at trial, trebled pursuant to Section 4 of the Clayton Act, 15 U.S.C. § 15.

E. That the Court award damages sustained by Enmodes on the Counts in an amount to be determined at trial pursuant to BGB §§ 249 et seq. and 325.

F. That the Court award to Enmodes the cost of suit, including reasonable attorneys' fees.

G. That the Court enjoin Counterclaim-Defendants from further defamatory statements about Enmodes and Dr. Kaufmann.

H. That the Court enjoin Counterclaim-Defendants from further interference with Enmodes actual and prospective business relationships.

I. That the Court grant Enmodes such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Counterclaim-Plaintiffs Enmodes GmbH and Tim Kaufmann hereby demand a jury trial on all claims and issues so triable.

**HIGHLY CONFIDENTIAL**

Dated: October 20, 2023                    Respectfully submitted,

                                           ENMODES GMBH and TIM KAUFMANN
                                           By their attorneys

                                           */s/ Carolyn E. Riggs*

                                           Carolyn E. Riggs, BBO# 685401
                                           ICE MILLER LLP
                                           One American Square, Suite 2900
                                           Indianapolis, IN 46282-0200
                                           Tel: (317) 236-2388
                                           Fax: (317) 529-4860
                                           carolyn.riggs@icemiller.com

                                           Kenneth Sheehan (*pro hac vice*)
                                           ICE MILLER LLP
                                           200 Massachusetts Avenue NW, Suite 400
                                           Washington, DC 20002
                                           Tel: (202) 807-4008
                                           Fax: (202) 807-4009
                                           ken.sheehan@icemiller.com

                                           Candice Reder (*pro hac vice*)
                                           ICE MILLER LLP
                                           250 West Street, Suite 700
                                           Columbus, OH 43215
                                           Tel: (614) 462-1117
                                           Fax: (614) 222-3432
                                           candice.reder@icemiller.com

                                           *Attorneys for Counterclaim-Plaintiffs*

**HIGHLY CONFIDENTIAL**

## CERTIFICATE OF SERVICE

I, Carolyn Riggs, hereby certify that on October 20, 2023, a true copy of the foregoing Defendants' Answer, Affirmative Defenses, And Counterclaims was filed through the ECF system, which will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

*/s/ Carolyn E. Riggs*

Carolyn E. Riggs, BBO# 685401
ICE MILLER LLP
One American Square, Suite 2900
Indianapolis, IN 46282-0200
Tel: (317) 236-2388
Fax: (317) 529-4860
carolyn.riggs@icemiller.com

Kenneth Sheehan (*pro hac vice*)
ICE MILLER LLP
200 Massachusetts Avenue NW, Suite 400
Washington, DC 20002
Tel: (202) 807-4008
Fax: (202) 807-4009
ken.sheehan@icemiller.com

Candice Reder (*pro hac vice*)
ICE MILLER LLP
250 West Street, Suite 700
Columbus, OH 43215
Tel: (614) 462-1117
Fax: (614) 222-3432
candice.reder@icemiller.com