UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ABIOMED, INC. and ABIOMED EUROPE, GmbH, | ) ) ) ) ) |
| Plaintiffs and Counterclaim-Defendants, | ) ) ) |
| v. | ) Case No. 23-cv-10087-DJC |
| ENMODES GmbH and TIM KAUFMANN, | ) ) ) |
| Defendants and Counterclaim-Plaintiffs. | ) ) ) ) ) |

## MEMORANDUM AND ORDER

**CASPER, J.**                                                    **August 23, 2024**

## I.    Introduction

Plaintiffs and Counterclaim Defendants Abiomed, Inc. ("Abiomed USA") and Abiomed Europe GmbH ("Abiomed Europe") (collectively, "Abiomed") brought suit against Defendants and Counterclaim-Plaintiffs Enmodes GmbH ("Enmodes") and Tim Kaufmann ("Kaufmann") (collectively, "Defendants"), alleging misappropriation of trade secrets and breaches of contract. D. 17-1.  Defendants answered Abiomed's complaint with numerous counterclaims.  D. 89. Abiomed has now moved to file a "first amended and supplemental complaint," D. 98.  Abiomed has also moved to dismiss Count I of the counterclaims, D. 100.[1]  For the reasons stated below,

---

[1] The Court notes that Defendants initially asserted eight counterclaims against Abiomed for breaches of contract, tortious interference, commercial disparagement and unfair and deceptive trade practices in violation of Mass. Gen. Laws. c. 93A,  see D. 89, then subsequently dismissed Counterclaim Counts IV through VIII,  D. 132.  Abiomed moved to dismiss Counterclaims I and

the Court ALLOWS Abiomed's motion to amend the complaint, D. 98, and DENIES its motion to dismiss Count I of the counterclaims, D. 100.

## II.    Factual Background

The Court draws the following factual allegations from Defendants' counterclaims, D. 89-1, as well as exhibits incorporated by reference therein, which are presumed to be true for the purpose of deciding the motion to dismiss.

Enmodes is a German engineering firm in Aachen, Germany managed and co-founded by Kaufmann in 2011. D. 89-1 ¶¶ 2, 9. Enmodes is a "globally active developer" for medical products that focuses on cardiovascular circulatory systems. Id. ¶ 10. Abiomed is a medical device company that develops and sells medical devices for cardiac and respiratory support, including a line of heart pumps under the brand name Impella. Id. ¶¶ 11, 16-17. The Impella is the only product in its market both in the U.S. and worldwide. Id. ¶ 20. Abiomed sells the Impella in the U.S., Canada, Europe and Japan. Id. ¶ 21. Abiomed plans to commercialize the Impella in China. Id. ¶ 22. Abiomed and Enmodes have a history of working together but are also competitors. Id. ¶ 13.

### A.    The Parties' Contractual Relationship

In 2017, Abiomed Europe and Enmodes entered into a Development & License Agreement ("2017 DLA") effective December 1, 2017. Id. ¶ 24. In 2020, Abiomed Europe and Enmodes executed a consulting services agreement ("CSA")[2] effective August 2020, under which Enmodes

_____

IV-XII, but given the dismissal by Defendants, only Abiomed's challenge to Counterclaim I remains for this Court to address.

[2] The CSA was attached to Abiomed's motion to dismiss, D. 101-2, and because the CSA is referenced in the counterclaims, D. 89-1 ¶ 26, and is central to Defendants' claim, the Court will consider it as to the Rule 12(b)(6) motion to dismiss. See Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993).

was "'to provide product development work, including modelling and CAD work related to computational fluid mechanics'" pertaining to Abiomed medical devices.  Id. ¶ 26; D. 101-2 at 2.

The CSA contained provisions relating to termination of the contract in Section 3.  Id. ¶ 28; D. 101-2 at 2-3.  Section 3 provided in relevant part that:

> [Abiomed] may immediately terminate this Agreement upon written notice to [Enmodes] in case that Dr. Kaufmann ceases to be an employee of [Enmodes].  In case that Dr. Ralf Borchardt, Dr. Fiete Böhning, or Dr. Sasha Groß-Hardt cease to employees of [Enmodes], [Enmodes] is obligated to provide adequate replacement.

D. 101-2 at 3.

The CSA also provided that all intellectual property rights were owned or assigned to Abiomed under the contract including all intellectual property rights "conceived, created, discovered, developed or invented by [Enmodes], its agents, officers or employees which in any manner . . . relate to the performance of [Enmodes's] services under this Agreement."  Id. at 4 (Section 5).

The CSA included a Confidentiality provision that provides that the "technical, scientific, business, legal, strategic, and other information received . . . directly or indirectly from [Abiomed], or developed by [Enmodes] on behalf of [Abiomed] in connection with the agreement . . . is received or developed by [Enmodes] in confidence, shall not be disclosed to third parties, and is to be used only for the purposes for which it is received or developed."  Id. at 4-5 (Section 7).

Finally, the CSA also included a noncompetition and nonsolicitation clause.  Id. at 7; D. 89-1 ¶ 29 (Section 13):

> During the Term of this Agreement and for two years thereafter, [Enmodes] will not perform services relating to catheter-based blood pumps for any competitors of [Abiomed], which for purposes hereof shall include, **[enumerated list]**, or any group, division or subsidiary or affiliated entity of the foregoing (collectively, the "Client Competitors"). . . .  During the term of this Agreement, [Enmodes] also agrees not to provide any services related to blood pumping or blood gas exchange for any Client Competitors.   Additionally, during the term of this Agreement and

during the extended non-competition period, each party agrees not to solicit or initiate contact or communications with the employees of the other party for the purpose of hiring such persons, without the written permission of the other party.

D. 101-2 at 7 (Section 13).

### A.   Enmodes Employees Join Abiomed and Abiomed Terminates the Contractual Relationship

On July 18, 2022, Abiomed terminated the CSA and 2017 DLA agreements with Enmodes. D. 89-1 ¶ 30.  As a basis for termination, Abiomed cited that "there is a high probability that Enmodes GmbH has disclosed our client's business secrets to a direct Chinese competitor."  Id. Abiomed subsequently filed various lawsuits and complaints in Germany and in Massachusetts against Enmodes for trade secret misappropriation.  Id. ¶¶ 32, 38-41.

About two weeks prior to Abiomed terminating the contract, Enmodes employees, Dr. Fiete Böhning, Dr. Sasha Groß-Hardt and Dr. Deepanshu Sodhani left Enmodes and joined Abiomed.  Id. ¶ 51.  All three employees submitted their notices of termination the same day on June 28, 2022.  Id.   Dr. Groß-Hardt was Enmodes's Head of Research, Dr. Sodhani was the R&D Product Manager and Dr. Böhning was head of Enmodes's Pump Development Division.  Id.  Drs. Böhning and Groß-Hardt were two of the longest serving researchers at Enmodes.  Id. ¶ 52. Enmodes has been unable to replace these three employees.  Id.

### B.   Enmodes' Development Work

Enmodes is currently developing a new heart catheterization pump that will treat patients with severe coronary artery disease "requiring high-risk PCI or AMI cardiogenic shock" which are the same indications that are treated by Abiomed's Impella.  Id. ¶ 54.  Enmodes's pumps will feature new technology that they have developed independently.  Id. ¶¶ 55-56.  In 2020, Enmodes previously disclosed to Abiomed that it was working on its own external pump to sell in China.

Id. ¶ 59.  Enmodes's entry into the market has been delayed by at least three to six months as a result of Abiomed's actions.  Id. ¶¶ 65-68.

## III.  Procedural History

Abiomed initiated this lawsuit in Essex Superior Court on October 17, 2022.  D. 2-1; D. 17-1.  Enmodes removed the matter to this Court and then moved to dismiss the complaint.  D. 2; D. 20.  The Court denied the motion to dismiss.  D. 60.  On October 20, 2023, Defendants answered the complaint and asserted counterclaims,  D. 74, which they subsequently amended, D. 89.  Abiomed then moved to file its amended complaint, D. 98.  On May 21, 2024, Defendants voluntarily dismissed Counterclaim Counts IV through VIII, D. 132, so Abiomed's motion to dismiss is pending only as to Counterclaim Count I, D. 100.  The Court heard the parties on the pending motions and took the matters under advisement.  D. 134.

## IV.  Discussion

### A.  <u>Motion to Amend Complaint</u>

A "court should freely give leave [to amend] when justice so requires," Fed. R. Civ. P. 15(a)(2), "unless the amendment 'would be futile, or reward, *inter alia*, undue or intended delay.'" Steir v. Girl Scouts of the USA, 383 F.3d 7, 12 (1st Cir. 2004) (quoting Resol. Tr. Corp. v. Gold, 30 F.3d 251, 253 (1st Cir. 1994)); U.S. ex rel. Gagne v. City of Worcester, 565 F.3d 40, 48 (1st Cir. 2009).  Accordingly, Rule 15(a)(2)'s "liberal amendment policy . . . does not mean that leave will be granted in all cases." Acosta-Mestre v. Hilton Int'l of P.R., 156 F.3d 49, 51 (1st Cir. 1998) (internal quotation marks and citation omitted).  "[I]f the proposed amendment would be futile because, as thus amended, the complaint still fails to state a claim, the district court acts within its discretion in denying the motion to amend."  Abraham v. Woods Hole Oceangraphic Inst., 553 F.3d 114, 117 (1st Cir. 2009) (internal citation and quotation marks omitted).

Abiomed seeks leave to file an amended complaint to include additional allegations concerning Abiomed's trade secret misappropriation by two other companies connected with Defendants, Suzhou Lungshield Medical Technology Ltd. ("Lungshield") and Lifeshield Medical Technology (Suzhouse) Ltd. ("Lifeshield"), as well as add Count IX that alleges a breach of implied good faith and fair dealing premised on German Civil Code §§ 241 and 242 concerning Defendants violation of the CSA's non-compete provision.  D. 98 at 1; D. 98-2 at 2, 30-31, 42-43, 61-63.  Defendants contend that Abiomed's proposed amended complaint is unduly prejudicial because it would greatly expand the scope of discovery and require Defendants to alter their trial tactics and strategy and the addition of Count IX is futile because it fails to state a claim.  D. 114 at 2.

### 1.    The Proposed Amendments Would Not Unduly Prejudice Defendants

Defendants contend that the amended complaint is unduly prejudicial because it would expand the scope of discovery, significantly increase costs by requiring alterations to the discovery deadline and require Defendants to alter its trial strategy and tactics because the original complaint "centered on the relationship and communications between Enmodes and MagAssist."  D. 114 at 12.  Although Defendants assert that adding additional factual allegations concerning trade secret misappropriation by Lungshield and Lifeshield would "significantly increase the scope of discovery," it is not clear that Defendants could not have already anticipated, at least to some extent, that the Abiomed would seek discovery concerning Lungshield.  The Court notes that the original complaint contained references to Lungshield, including that Lungshield was developing a pump that is a "copy of Abiomed's Impella heart pump," D. 17-1 ¶¶ 135-36, and "by facilitating development of products, including by the Chinese companies MagAssist and Lungshield," id. ¶¶ 167, 175, Abiomed suffered harm.  Abiomed notes that at least some, if not most, of the discovery concerning Lungshield has already taken place, which Defendants have agreed to produce.  See

D. 111-2 at 4-5, 7-8.  Although the Court recognizes that Lifeshield was not mentioned in the original complaint, Abiomed's document requests indicate that Abiomed defined Lungshield to include Lifeshield and already requested documents concerning Lifeshield.  See D. 111-2 at 8 & n.2; D. 112-14 at 5-6, 11-12, 15-18.  As Lungshield and Lifeshield have been part of discovery so far, the Court is not persuaded that the scope of discovery will be significantly enlarged to warrant denial of the proposed amended complaint.  See Cooper v. Charter Commc'ns Ents. I, LLC, No. 12-cv-10530-MGM, 2015 WL 1943858, at *6 (D. Mass. Apr. 28, 2015) (allowing motion to amend and holding that "[d]efendant cannot reasonably claim to be surprised or prejudiced by the allegations" in the proposed amended complaint because defendant had prior notice of these factual allegations).

Moreover, given that discovery has encompassed at least some of the allegations concerning Lungshield and Lifeshield, a drastic modification of the case schedule, if any, is not necessary.  See D. 114 at 14.  Since fact discovery was scheduled to conclude on August 8, 2024, D. 72 at 1, some modification of that part of the schedule may be warranted (if Magistrate Judge Boal who is resolving the pending discovery motions, determines that it is), but, dispositive motions are not due to be filed until February 6, 2025, id. at 2.  The Court further notes that although Abiomed waited until the last permissible day to move for leave to file an amended pleading, D. 98 (filed February 22, 2024), the filing remains within the time limits set by the scheduling order.  D. 72 at 1; Viscito v. Nat'l Plan. Corp., No. 18-cv-30132-MGM, 2019 WL 7578462, at *5 (D. Mass. July 5, 2019) (holding that motion to amend that was proposed a day before the scheduling order deadline did not unduly prejudice defendant because "[p]laintiff was entitled to rely on the deadline set by the court in the scheduling order for filing a motion for leave to amend the pleadings to add parties, claims, or defenses").

Finally, the Court notes that Defendants' argument that the proposed amendments will "force Enmodes to enact a major change to its trial tactics and strategy" does not warrant a different outcome.  See D. 114 at 15-16.  The "primary legal issue in the [proposed amended complaint] is identical to that raised by the [original] complaint," whether Defendants misappropriated Abiomed's confidential information and trade secrets and breached the parties' contract.  See Cooper, 2015 WL 1943858, at *6 (holding that the proposed amendment will not unduly disrupt the case or cause the defense of the case to be more onerous because the primary legal arguments in the amended complaint are identical to those raised in prior complaints).  Although the Court notes that the amended complaint asserts a new legal theory of bad faith in Count IX, that Count and bad faith theory is related to allegations in the original complaint regarding Defendants violating their obligations not to compete and sharing confidential and trade secret information.  See D. 17-1 ¶¶ 170-77 (asserting breach of contract claim based on non-competition clause in the CSA); D. 98-2 ¶¶ 253-66 (asserting breach of contract claim premised upon Defendants not adhering to "obligations on Enmodes to not compete with Abiomed by developing a catheter-based heart pump that competes with Abiomed's Impella line products" and sharing confidential information).  Accordingly, the Court allows the motion to amend to the extent it adds allegations concerning Lungshield and Lifeshield.[3]

2.    *The Addition of Count IX Would Not Be Futile*

Abiomed seeks to add Count IX in the proposed amended complaint which adds a breach of contract claim for violation of sections 241 and 242 of the German Civil Code based on

_____

[3] Defendants' submission of supplemental authority following the hearing, D. 137, does not compel a different result.  See Milliman, Inc. v. Gradient A.I. Corp., No. 21-cv-10865-NMG, 2022 WL 18032957, at *1-2 (D. Mass. July 11, 2022) (allowing protective order and ordering plaintiffs to provide a more fulsome disclosure concerning alleged trade secrets before discovery proceeds).  Although Defendants argued at the hearing for the first time that Abiomed was asserting new trade secret allegations, the Court notes that this argument was not contained in Defendants' briefing,

Defendants' contention that the CSA did not preclude Enmodes from developing and selling its own competing pump.  See D. 98-2 ¶¶ 253-66.  Defendants argue that Count IX is futile because Sections 241 and 242 cannot override express contractual provisions and Abiomed cannot show that Enmodes, Lungshield and Lifeshield are competitors.  D. 114 at 16-18.

"[W]here the question of futility is raised in opposition to a motion for leave to amend a complaint, the proposed amended complaint must satisfy the Rule 12(b)(6) standard."  Cooper, 2015 WL 1943858, at *3.  The parties agree that German law governs the CSA.  See D. 98-2 ¶ 254; D. 114 at 16-18.  Section 241(2) of the German Civil Code ("BGB") states that "an obligation may oblige each party to take account of the rights, legal interests and other interests of the other party."  See D. 107-9 at 23; D. 112-1 at 5.  Section 242 of the BGB states that "[a]n obliger has a duty to perform according to the requirements of good faith, taking customer practice into consideration."  D. 107-9 at 23; D. 112-1 at 6.  Sections 241(2) and 242 imply an obligation of good faith and fair dealing in a contract.  See D. 112-21 ¶ 10 ("Chrocziel Decl. I") (noting that parties "not only are obliged to fulfill what is provided in the agreed language, but also are bound by general concepts of contract law even if those concepts are not expressly set forth in the language of the contract but nevertheless are required to safeguard the interests of the other party"); see id. ¶¶ 20-21.[4]

To analyze a contract under German law, "the following canonical elements are factored into the interpretation: (1) [l]iteral meaning; (2) circumstances in the context of the contract making, to the extent that they have become apparent to the respective other party; (3) reasonable

_____

was not sufficiently briefed by the parties and is therefore not properly considered before the Court.  See D. 114 at 2; Peter Pan Bus Lines, Inc. v. Greyhound Lines, Inc., 189 F. Supp. 3d 217, 225 (D. Mass. 2016).

[4] Pursuant to Federal Rules of Procedure 44.1 the Court can consider expert opinions on the interpretation of foreign law.  See Fed. R. Civ. P. 44.1.

interests of the parties; (4) good faith."  D. 115 ¶ 19 ("Ernst Decl. I").  German courts weigh the relevant factors against each other and the weight of the factors can vary from case to case.  Id. ¶ 20.  The "clear and unambiguous wording does not preclude going for an interpretation based on the entirety of contextual factors," meaning that "there is no strict parol evidence rule in the law of the German Civil Code."  Id. ¶ 21.

Defendants claims that the express language of Section 13 of the CBA renders Abiomed's Count IX futile because Section 13 is a non-competition provision that expressly limits Enmodes ability to compete.  D. 114 at 17.  The relevant language in Section 13 states that:

> [Enmodes] will not perform services relating to catheter-based blood pumps for any competitors of [Abiomed], which for purposes hereof shall include, **[enumerated list]**, or any group, division or subsidiary or affiliated entity of the foregoing (collectively, the "Client Competitors"). . . During the term of this Agreement, [Enmodes] also agrees not to provide any services related to blood pumping or blood gas exchange for any Client Competitors."

D. 112-20 at 7.  Abiomed claims that Section 13 is not limited to the list of enumerated competitors and that the non-competition clause is much broader because the list of competitors is nonexhaustive give the prohibition that Enmodes not perform such services "for any competitors of [Abiomed], which for purposes hereof shall include, [enumerated list]."  Id.

The Court notes that Defendants' expert Professor Doctor Wolfgang Ernst ("Ernst") claims that Sections 241(2) and 242 cannot upset the parties' express contractual obligations, but cites no cases for support of his assertion.  Ernst Decl. I  ¶ 45.  Abiomed's expert, Peter Chrocziel ("Chrocziel"), contends that "the duty not to compete directly is *inherent* in certain commercial relationships."  Chrocziel Decl. I ¶ 20 (emphasis in original).  Chrocziel cites German case law for support in which the German Court held that a secondary obligation was implied under the contract, but it is not clear to whether these cases address instances where the parties had expressly agreed to a specific non-competition provision.  See Chrocziel Decl. I ¶¶ 21-25 (citing cases); see,

e.g., D. 112-2 at 3-4 (discussing a laboratory agreement between competitors and holding that the contractor could not utilize the results for himself that were paid for by the client because a "secondary obligation is self-evident in the case of the specific contractual relationship and is not required to be expressly set out in the written agreement"); D. 112-3 at 3 (discussing a publication contract in which there was no express competitive restraint and stating that "[i]f… an express non-competition clause to the detriment of the author has not been agreed" a breach of good faith could be found if the work competed by dealing with the "same subject matter, is aimed at the same customer base and is likely to seriously compete with the earlier work in terms of type and scope").  The parties' experts agree, however, that whether there has been a violation of good faith is often a case-specific, factual determination.  See Ernst Decl. I ¶¶ 44-45, 47; Chrocziel Decl. I ¶¶ 26-27.  Here, because German courts consider multiple factors in interpreting a contract that requires a factual determination, and the language of the statutes broadly apply to an implied good faith, the Court concludes that the addition of Count IX would not be futile.  The Court also recognizes that the theory of good faith, which is the predicate for Count IX, is closely linked to the breach of contract claim concerning the noncompetition provision in Count II and further supports that Count IX is not futile.  See Chrocziel Decl. I ¶ 20 (noting that "[u]nder German law, a court could find that, given the language of Section 13 of the CSA, Enmodes was obligated . . . to comply with its duty under BGB Section 241(2) to take account of Abiomed's interests and its duty under BGB 242 to perform the CSA in good faith"); D. 98-2 ¶¶ 185-94, 253-66.  Accordingly, the Court allows the motion to amend to add Count IX as well.[5]

---

[5] To the extent that Defendants also challenge the addition of Count IX on the grounds that Enmodes (or the affiliated entities of Lungshield and Lifeshield) is not a competitor of Abiomed, see D. 114 at 17-18, that argument also fails at this stage.  Defendants' own counterclaims allege that the parties are competitors.  D. 89-1 ¶ 13 (alleging that "[a]lthough Abiomed and [Enmodes] have a longstanding history of working together, they are also competitors"); D. 111-1 at 13 (citing

### B. <u>Motion to Dismiss Counterclaims</u>

Abiomed moves to dismiss Count I of the counterclaims for breach of contract of Sections 3 and 13 of the CSA for the solicitation of three Enmodes employees on the basis of lack of subject matter jurisdiction and failure to state a claim because the non-solicitation provision upon which the claim is based is unenforceable under German law.  <u>See</u> D. 101 at 7.

### 1. *Standard of Review*

Under Fed. R. Civ. P. 12(b)(6), the Court must determine if the facts alleged "plausibly narrate a claim for relief."  <u>Germanowski v. Harris</u>, 854 F.3d 68, 71 (1st Cir. 2017).  Reading the complaint "as a whole," the Court must conduct a two-step, context-specific inquiry.  <u>García-Catalán v. United States</u>, 734 F.3d 100, 103 (1st Cir. 2013).  First, the Court must perform a close reading of the claim to distinguish the factual allegations from the conclusory legal allegations contained therein.  <u>Id.</u>  Factual allegations must be accepted as true, while legal conclusions are not entitled credit.  <u>Id.</u>  Second, the Court must determine whether the factual allegations present a "reasonable inference that the defendant is liable for the misconduct alleged."  <u>Haley v. City of Boston</u>, 657 F.3d 39, 46 (1st Cir. 2011) (quoting <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009)).  In sum, the complaint must provide sufficient factual allegations for the Court to find the claim "plausible on its face."  <u>García-Catalán</u>, 734 F.3d at 103 (quoting <u>Iqbal</u>, 556 U.S. at 678).  On a Rule 12(b)(6) motion, the Court may also consider documents incorporated into the complaint, as well as "documents the authenticity of which are not disputed by the parties," "official public records," "documents central to plaintiffs' claim" and "documents sufficiently referred to in the complaint."  <u>Watterson</u>, 987 F.2d at 3.

---

<u>Lima v. Holder</u>, 758 F.3d 72, 79 (1st Cir. 2014) (noting that, generally, "a party's assertion of fact in a pleading is a judicial admission by which it normally is bound throughout the course of the proceeding" (internal citation and quotation marks omitted))).

The parties agree that German law governs the CSA.  See D. 89-1 ¶ 70; D. 101 at 7; see Fed. R. Civ. P. 44.1.

        2.     *The Court Has Supplemental Jurisdiction Over Counterclaim Count I*

Where a federal district court has "original" subject matter jurisdiction over a claim, the court "shall have supplemental jurisdiction over all other claims so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III."  28 U.S.C. § 1367(a).  It may decline to exercise supplemental jurisdiction in certain circumstances, including but not limited to when "the claim substantially predominates over the claim or claims over which the district court has original jurisdiction" or where "in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c). The Court can exercise supplemental jurisdiction over claims where the state and federal claims derive from a "common nucleus of operative fact" and a party would "ordinarily be expected to try them all in one judicial proceeding."  See Envisn, Inc. v. Davis, No. 11-cv-12246-FDS, 2012 WL 1672887, at *2–3 (D. Mass. May 11, 2012) (quoting United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 725 (1966)).  Courts exercise supplemental jurisdiction when the "facts are interwoven" and the state and federal claims require similar evidence.  See MOCA Sys., Inc. v. Bernier, No. 13-cv-10738-LTS, 2013 WL 6017295, at *1 (D. Mass. Nov. 12, 2013) (holding that the court had supplemental jurisdiction over state law claims including breach of contract and misappropriation of trade secrets because "[i]t is difficult to envision the state law claims being tried without evidence being presented" of defendant's federal claim under the Computer Fraud and Abuse Act); see also Williams v. Mass. Bay Transp. Auth., No. 17-cv-11632-NMG, 2021 WL 682003, at *2 (D. Mass. Jan. 29, 2021), report and recommendation adopted (Feb. 22, 2021) (exercising supplemental jurisdiction over breach of contract counterclaims relating to settlement agreement because "the Settlement Agreement potentially extinguishes [plaintiff's] claims in this

case, the [defendant's] counterclaims are related to [plaintiff's] assertions, and form part of the same case or controversy").

Here, the Court has federal question subject matter jurisdiction under § 1331 over the Defend Trade Secrets Act ("DTSA") claim, 18 U.S.C. § 1836.  D. 17-1 ¶¶ 186-96.  Abiomed claims that the Court does not  have supplemental jurisdiction over Counterclaim Count I because there is no factual overlap between the federal trade secret claim that forms the basis of this Court's jurisdiction and the breach of contract counterclaim that is grounded in the non-solicitation of three of Enmodes' employees.  See D. 101 at 24.

The core of the parties' dispute, however, involves trade secret misappropriation and a breach of contract of the same agreement.  See D. 17-1 ¶ 1.  In the complaint, Abiomed alleges that Defendants misappropriated its trade secrets and breached the parties' agreement, the CSA, not to disclose confidential information and not to compete.  See id. ¶¶ 162-231.  In Counterclaim Count I, Defendants allege that Abiomed breached the same agreement by soliciting three key employees from Enmodes, who all resigned in June 2022, about two weeks prior to Abiomed terminating the relationship with Enmodes for alleged trade secret misappropriation.  See D. 89-1 ¶¶ 28-30, 51.  Defendants allege that Abiomed intentionally solicited employees whom the parties had previously agreed were important to Enmodes and did so as part of an anti-competitive campaign to limit Enmodes' ability to compete.  Id. ¶¶ 28, 51, 61-62, 65.  Defendants further allege that this solicitation has detrimentally damaged Enmodes' ability to enter the market.  Id. ¶¶ 65-68.

The underlying facts of Enmodes's breach of contract counterclaim and Abiomed's federal trade secret misappropriation claim in the complaint are closely related.  To prove trade secret misappropriation, Abiomed will have to establish that "(1) the information is a trade secret; (2) the

14

plaintiff took reasonable steps to preserve the secrecy of the information; and (3) the defendant used improper means, in breach of a confidential relationship, to acquire and use the trade secret." Kreatio Software Priv. Ltd. v. IDG Commc'ns, Inc., No. 23-cv-10273-IT, 2024 WL 1251277, at *3 (D. Mass. Mar. 22, 2024). The parties' obligations under the CSA will bear at least on the latter two elements. See Evisn, 2012 WL 1672887, at *3 (exercising supplemental jurisdiction over an assault and battery claim in a misappropriation case where "it is hard to imagine that the misappropriate claims would be tried without evidence of the circumstances under which [the defendant] abruptly left the company and allegedly took the information"). To prove Defendant's counterclaim for breach of the non-solicitation provision of the CSA, which the parties agree is governed by German law, D. 89-1 ¶ 70; D. 101 at 7, Defendants will have to prove that (1) the non-solicitation clause is enforceable and (2) there was a breach of contract by establishing an "obligation, breach, damages, and intent or negligence." See D. 101-51 ¶ 12 ("Herrmann Decl."); see also D. 118-52 ¶ 35 ("Ernst Decl. II"); D. 130-7 ¶ 8 ("Chrocziel Decl. II").

Here, Defendants claim that discovery into the timing and motivation of Abiomed's breach will involve investigating similar facts as the potential trade secret violations because Abiomed terminated the CSA under the pretense of misappropriated trade secrets a few weeks after soliciting Enmodes's employees, D. 118-51 at 13, two of these employees were identified in the CSA as key to Enmodes' development efforts, D. 89-1 ¶ 73, and the complaint alleges that Enmodes employees worked closely with Abiomed, D. 17-1 ¶ 116. As the parties' dispute concerns the anti-competitive conduct of each respective party during the same sequence and timing of events, the facts and testimony involving Enmodes allegedly acquiring and misappropriating Abiomed's trade secrets would overlap with the facts and testimony involving Enmodes' development efforts and the pretense for Abiomed allegedly soliciting these employees and subsequent termination of the

parties' contractual relationship.  See D. 17-1; D. 89-1; MOCA Sys., 2013 WL 6017295, at *1.

Moreover, the issues raised in resolving the breach of contract of the non-solicitation provision

will likely implicate the merits of the underlying trade secret misappropriation dispute as one of

the exceptions for determining whether the non-solicitation clause is enforceable under German

law requires, for example, proof that Defendants were engaged in anti-competitive conduct.  See

Herrmann Decl. ¶¶ 12-13, 15;  Ernst Decl. II ¶¶ 35, 40-41; Bd. of Trustees of Iuoe Loc. 4 Pension

Fund v. Alongi, No. 21-cv-10163-FDS, 2022 WL 17541936, at *5-6 (D. Mass. Dec. 8, 2022)

(exercising supplemental jurisdiction over state law counterclaim that offered a competing theory

of defendant's termination because the success of the counterclaim depends upon the merit of the

federal claim and there likely will be "significant overlap in the witnesses and evidence involved

in the state and federal claims").

　　　　Defendants further assert that Counterclaim Count I shares a common nucleus of facts with

the trade secret claim because the basis for the claims arise out the same contract.  See D. 118-51

at 12-13; McCoy v. Iberdrola Renewables, Inc., 760 F.3d 674, 683 (7th Cir. 2014) (recognizing

that "[d]ifferent causes of action between the same parties that arise from the same contract and

same events will ordinarily be part of the same case or controversy"); cf. CheckPoint Fluidic Sys.

Int'l, Ltd. v. Guccione, No. 10-cv-4505, 2012 WL 195533, at *4 (E.D. La. Jan. 23, 2012) (noting

that while "the contractual connection between defendants' counterclaims and [plaintiffs'] state

law breach of [ ] agreement claim is not sufficient to bring the counterclaims within this Court's

supplemental jurisdiction").  At a minimum, the contract is a central factor in the parties' dispute.

This overlap as to the CSA weighs in favor of supplemental jurisdiction particularly given the

nature of the parties' respective allegations.  Accordingly, the Court has supplemental jurisdiction

over Counterclaim Count I and will exercise it (particularly where the Court finds that there is no

basis to decline to do so under § 1367(c)) and, accordingly, denies Abiomed's motion to dismiss on this basis.

### 3.   *Counterclaim Count I is Not Subject to Dismissal Under Rule 12(b)(6)*

Abiomed also argues that Counterclaim Count I also fails to state a claim because the non-solicitation provision is unenforceable under German law.  D. 101 at 7-9.  Pursuant to German law, non-solicitation provisions can be enforceable if either of two exceptions apply:  (1) when the solicitation constitutes an "unfair commercial act" under the German Act Against Unfair Competition ("UWG") or (2) when the non-solicitation provision is ancillary to the contract and there is a special relationship of trust between the parties or a special need for protection.  See Herrmann Decl. ¶¶ 12-13, 15; Ernst Decl. II ¶¶ 35, 37.  An unfair commercial act requires showing of "deliberate obstruction of a competitor" and a "concrete competitive relationship" between the parties, which is case-specific.  See Ernst Decl. II ¶¶ 40-44; D. 118-23 ¶ 12 ("Freund Decl.") (stating that a behavior qualifies as unfair competition if it "(1) constitutes a commercial practice, (2) the parties have a competitive relationship, (3) and the action fulfils one of the conditions of unfairness detailed in the UWG- here: obstructive behavior").  Obstruction includes an inability of a competitor to adequately bring their performance to the market based on its own efforts and is based on the "circumstances of the individual case."  See D. 118-30 (recognizing that obstruction can include soliciting employees with the aim of impairing a company's ability to compete) Ernst Decl. II ¶ 47.  To constitute a special relationship, German law has provided two examples of special relationships:  (1) non-solicitation clauses that are agreed upon during risk assessments or due diligence conducted prior to acquisition of companies and (2) non-solicitation clauses that apply when competitor companies enter into cooperation agreements.  See Herrmann Decl. ¶ 12; Ernst Decl. II ¶ 38.

Here, Defendants allege that Abiomed and Enmodes are competitors, Abiomed solicited three employees away from Enmodes, Enmodes has been unable to replace the three employees that have been solicited, two of which were key employees to Enmodes' development efforts, Enmodes has been significantly delayed in entering the market and Abiomed intended to prevent or delay entry into the market after discovering Enmodes' developmental efforts.  D. 89-1 ¶¶ 13, 25, 28-29, 51-52, 58-59, 61-62, 65-68.   The parties have submitted conflicting affidavits concerning whether Defendants' allegations are sufficient to fall within one of the two exceptions for the non-solicitation provision to be enforceable.  Compare Ernst Decl. ¶ 36-53; Freund Decl. ¶ 11 with Chrocziel Decl. II ¶¶ 8-16; Herrmann Decl. ¶¶ 14-51.  As to whether there was a special relationship between the parties, the counterclaim alleges that Enmodes was developing "new technology" that was not necessarily covered by the agreement, D. 89-1 ¶ 55, the two examples provided of a special relationship are not exhaustive and this Court has not been directed to any cases that mirror the alleged circumstances here.  See Ernst Decl. II ¶¶ 38-39; Chrocziel Decl. II ¶ 11.  As to whether Abiomed's solicitation constituted an obstructive practice and unfair commercial act pursuant to German law is a fact-specific determination, and therefore, the Court cannot decide at the motion to dismiss stage that Count I lacks merit without further factual development.  See Freund Decl. ¶ 19 (noting that determining obstruction "must be assessed taking into account all the facts of the specific case"); Herrmann Decl. ¶ 17 (noting that determining obstruction requires that the party "acted with an unfair purpose or used unfair means"); D.101-10 at 3 (reasoning that in determining whether a competitor has been impaired "can only be assessed based on an overall assessment of the circumstances of the individual case, taking into account the interests of competitors, consumers and other market participants as well as the general public"); D. 118-27 at 2 (recognizing that "[w]hether the conditions of a targeted obstruction in the

aforementioned sense are met must be determined on the basis of all circumstances of the individual case").

Abiomed further argues that even if the non-solicitation clause is enforceable, Enmodes has failed to plead a breach of that provision because Enmodes "did not plead that Abiomed initiated contact with the employees for the purpose of hiring them." See D. 101 at 9; see Herrmann Decl.  ¶¶ 60-61 (stating that solicitation requires initiating contact and a "targeted, significant proactive influence on the employee with the aim of inducing him to change his job"); D. 101-32 at 5 (recognizing that "soliciting" requires "at least a targeted, deliberate influence on the employee with the aim of getting them to change jobs").  Defendants, however, have alleged in their counterclaims that Abiomed "persuaded" Enmodes employees to work at Abiomed by a senior officer at Abiomed and all three employees submitted their resignation on the exact same day.   D. 89-1 ¶ 51.  At the motion to dismiss stage, such alleged, concerted action gives rise to a plausible inference that Abiomed did initiate and engage in targeted conduct that resulted in influencing all three employees to join Abiomed.

For all of the aforementioned reasons, the Court denies Abiomed's motion to dismiss Counterclaim Count I.

## V.    Conclusion

For the foregoing reasons, the Court ALLOWS the motion to amend the complaint, D. 98 and DENIES the motion to dismiss Counterclaim Count I, D. 100.

**So Ordered.**

/s Denise J. Casper
United States District Judge
