UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
_____
                                )
ABIOMED, INC., et al.,          )
                                )
          Plaintiffs,           )
                                )
               v.               )        Civil Action No. 23-10087-DJC
                                )
ENMODES GmbH, et al.,           )
                                )
          Defendants.           )
_____)
```

ORDER ON PLAINTIFFS' MOTION TO COMPEL
AND DEFENDANTS' MOTION FOR A PROTECTIVE ORDER[1]
[Docket Nos. 145, 162]

September 3, 2024

Boal, M.J.

　　Plaintiffs Abiomed, Inc. and Abiomed Europe GmbH (collectively, "Abiomed") have

moved to compel defendants Enmodes GmbH and Tim Kaufmann to produce documents

responsive to Requests for Production ("RFPs") 16, 22, 39, 47, 49, and 55-56 and samples of

each of the Defendants' heart pumps, whether in final form or in development.  Docket No. 145.

Defendants have moved for a protective order precluding Abiomed from pursuing further

discovery regarding (1) certain components of Project Golden Dragon; (2) theories not pleaded

in the Complaint or set forth in Plaintiffs' responses to discovery; and (3) assertions from the

proposed amended complaint.  Docket No. 162.  This Court heard oral argument on August 21,

2024.  For the following reasons, this Court grants in part and denies in part Abiomed's motion

---

[1] On June 25, 2024 and July 30, 2024, Judge Casper referred the motions to the undersigned.
Docket Nos. 153, 173.

to compel and denies the Defendants' motion for a protective order.

I.      RELEVANT BACKGROUND

Abiomed develops and sells catheter-based heart pumps and other cardiac-related medical devices.  Amended Complaint at ¶¶ 2, 19.[2]  Abiomed's core product line is its heart pumps, which it markets under the name Impella.  Id. at ¶ 20.  Abiomed entered into consulting agreements with Enmodes, a small German engineering firm whose co-founder and managing director is defendant Kaufmann.  Id. at ¶ 3.  According to Abiomed, under those agreements, Enmodes was to provide services to assist the development of particular aspects of Abiomed's next-generation compressible heart-pump, the Impella ECP.  Id.

In its complaint, Abiomed alleges that it shared its valuable and proprietary information and trade secrets with Enmodes in reliance on Enmodes' contractual commitments:

> to keep confidential Abiomed's information and any discoveries Enmodes made during the project, to refrain from providing services to Abiomed's competitors, and to acknowledge Abiomed's ownership of intellectual property, including the confidential information and trade secrets Abiomed provided to Enmodes and any intellectual property created or discovered by Enmodes during its work for Abiomed.

Id. at ¶ 4.  Abiomed further alleges that Enmodes wrongfully and in secret disclosed Abiomed's confidential information and trade secrets to a Chinese company co-founded by Kaufmann.  Id. at ¶ 5.  According to Abiomed, that company, MagAssist, which touts itself as Abiomed's competitor, has improperly used Abiomed's information to file Chinese patent applications and has falsely attempted to claim Abiomed's innovations as its own.  Id.

Abiomed also alleges that Defendants misused Abiomed's confidential information and

---

[2] On August 23, 2024, Judge Casper granted Abiomed's motion to file an amended and supplemental complaint, which Abiomed filed on August 27, 2024.  Docket Nos. 191, 196.

trade secrets to develop, in conjunction with another Chinese Company, Lungshield,[3] a knockoff of the currently marketed Impella line of intravascular blood pumps. Id. at ¶ 6. They refer to that pump internally as the "Golden Dragon." Id. at ¶¶ 134, 171.

II.    ANALYSIS

   A.    Standard Of Review

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Whether discovery is proportional to the needs of the case depends on, among other things, "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the expense of the proposed discovery outweighs its likely benefit." Id.

If a party fails to respond to requests for production of documents or interrogatories, the party seeking discovery may move to compel production of the requested information. See Fed. R. Civ. P. 37(a)(3). "[T]he party seeking an order compelling discovery responses over the opponent's objection bears the initial burden of showing that the discovery requested is relevant." Torres v. Johnson & Johnson, No. 3:18-10566-MGM, 2018 WL 4054904, at *2 (D. Mass. Aug. 24, 2018) (citation omitted). "Once a showing of relevance has been made, the objecting party bears the burden of showing that a discovery request is improper." Id. (citation omitted).

Courts may also issue protective orders when appropriate. Specifically, Rule 26(c)(1) provides that "[a] party or any person from whom discovery is sought may move for a protective

---

[3] According to Abiomed, Lungshield is a sister company of Enmodes because both are owned by Lifeshield, another Chinese company. Amended Complaint at ¶ 6.

order in the court where the action is pending.... The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense...." Fed. R. Civ. P. 26(c)(1).  Rule 26 "confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." Seattle Times Co. v. Rhinehart, 467 U.S. 20, 36 (1984).

      B.    Discussion

By this motion, Abiomed seeks documents regarding Project Golden Dragon.  Docket No. 146-32 at 5.  It appears that Defendants have already produced some documents regarding that project.  Id. at 9.  Abiomed, however, argues that Defendants must produce all documents regarding Project Golden Dragon responsive to RFPs 16, 22, 39, 47, 49, 55, and 56 through the present (id. at 10-19); collect and produce documents regarding Project Golden Dragon from four additional custodians (id. at 19-20); and produce samples of all versions of the Golden Dragon Pump (id. at 23-24).  Defendants, on the other hand, have moved for protective order precluding discovery regarding Project Golden Dragon.[4]  Docket No. 162.

      1.    MUTSA Does Not Prevent The Discovery Sought By Abiomed

Defendants argue that Abiomed's failure to articulate its trade secrets and confidential information precludes its ability to seek discovery about Project Golden Dragon.  Docket No. 157-4 at 11-13; Docket No. 162-7 at 15-16.  In addition to claims for breach of contract and federal trade secret claims, Abiomed has brought claims under the Massachusetts Uniform Trade Secrets Act ("MUTSA").  See Complaint at ¶¶ 186-196.  Under MUTSA,

      [b]efore commencing discovery relating to an alleged trade secret, the party

---

[4] Defendants also moved for a protective order precluding discovery regarding the allegations of the Amended Complaint, which, at the time the motion was filed, had not yet been entered. Docket No. 162 at 5.  Judge Casper has since allowed Abiomed's motion to amend and, therefore, this request is now moot.

> alleging misappropriation shall identify the trade secret with sufficient particularity under the circumstances of the case to allow the court to determine the appropriate parameters of discovery and to enable reasonably other parties to prepare their defense.

M.G.L. c. 93, § 42D.  Even before MUTSA was enacted, courts recognized that when discovery of a defendant's alleged trade secrets and confidential information is sought in litigation regarding misappropriation by a defendant of a plaintiff's trade secrets or confidential information, it is not enough to analyze the requested discovery in terms of relevance.  See, e.g., Microwave Research Corp. v. Sanders Assocs., Inc., 110 F.R.D. 669, 672 (D. Mass. 1986). Rather, courts must strike a balance between the rights of plaintiff to examine relevant information and the rights of defendant to protect its own trade secrets.  See id. (citing DeLong Corp. v. Lucas, 138 F.Supp. 805, 808 (S.D.N.Y. 1956)).

The Defendants acknowledge that Abiomed has sufficiently disclosed at least three alleged trade secrets (the "Asserted Trade Secrets") related to the Impella ECP.  Docket No. 157-4 at 5.  Nevertheless, they argue that the Asserted Trade Secrets are not in the Project Golden Dragon design and, therefore, Abiomed is barred from any further discovery regarding Project Golden Dragon.  Id. at 12.  First, this Court disagrees that Abiomed has sufficiently disclosed only the three Asserted Trade Secrets.  For example, in paragraph 83 of the Amended Complaint, Abiomed alleges that "[u]nder the CSA and SOW, Abiomed provided Enmodes with detailed confidential digital design (CAD) models of the Impella ECP, the Impella CP, and certain other Abiomed components."  Amended Complaint at ¶ 83.  The Amended Complaint further states that such information was made available to Enmodes as a ZIP file on December 1, 2020.  Id. Such disclosure is sufficient to identify the alleged trade secrets.

In addition, the Defendants ignore that Abiomed's claims are not limited to those asserting misappropriation of trade secrets under MUTSA.  Abiomed has also asserted claims for

misappropriation of trade secrets under the Defends Trade Secrets Act ("DTSA") as well as contractual claims.  Neither the DTSA nor the contractual claims require a detailed description of trade secrets before discovery can proceed.  Finally, it appears that, since discovery opened seven months ago, Defendants never sought to sequence discovery or indicated that they intended to withhold documents based on MUTSA.  Accordingly, this Court finds that MUTSA does not serve as a basis for withholding the discovery that Abiomed seeks by this motion or to issue the protective order that the Defendants seek.

      2.    <u>Relevance</u>

To the extent that Defendants argue that documents regarding Project Golden Dragon are not relevant, <u>see</u> Docket No. No. 157-4 at 6-7, 8, those arguments are largely arguments about the merits of Abiomed's claims.  This Court finds that Abiomed is entitled to discovery regarding Project Golden Dragon.  Nevertheless, this Court also finds that RFPs 39 and 47 are overly broad.  Defendants must produce documents responsive to RFPs 16, 22, 49, 55, and 56, but not 39 and 47.  They shall also produce samples of all versions of the Golden Dragon pump. They shall do so within three weeks.

      3.    <u>Date Cut-Off</u>

The parties dispute whether responsive materials post-dating January 2023 should be produced.  <u>Compare</u> Docket No. 146-32 at 17-19 <u>with</u> Docket No. 157-4 at 16-17.  As it appears that the development of the Golden Dragon pump is ongoing, <u>see</u> Docket No. 146-32 at 17-18, this Court agrees that responsive documents should be produced through March 21, 2024.

      4.    <u>Additional Custodians</u>

Defendants collected and produced responsive documents from ten custodians that they represent are reasonably likely to have discoverable information.  <u>See</u> Docket No. 157-4 at 14.

Abiomed seeks an order compelling the Defendants to collect and produce documents from four additional custodians:

- *Christian Wischnewski*: Wischnewski worked at Enmodes before he became the R&D and Operations head at Lungshield.  Docket No. 146-32 at 19.  According to Abiomed, he manages work performed by Lungshield personnel aimed at copying the features of the Impella products into the Golden Dragon design and frequently communicates about such work.  Id.  Abiomed also maintains that Wischnewski was involved in Lungshield from its conception, and less than two months after Enmodes received Abiomed's confidential information, he was on the front lines performing in depth "Abiomed research" to be presented to entice investors into providing capital for Enmodes' development of Golden Dragon.  Id.  Defendants, however, represent that Wischnewski has never been an Enmodes employee.  Docket No. 157-6 at 3.

- *Oliver Schitthelm, Mario Diedrich, and Malte Schöps.*  Abiomed maintains that these three custodians lead the Golden Dragon Project.  Docket No. 146-32 at 20. According to Abiomed, Schöps is described as the author of a January 14, 2022 "Monthly Project Status Report" that details the Defendants' efforts to replicate the features of Impella in developing the Golden Dragon pump.  Id.  Diedrich is described as serving as the lead of "Electrical Development."  Id.  Oliver Schitthelm was the Enmodes employee tasked with coordinating the work between the Lungshield and Enmodes teams.  Id.  Schitthelm, Diedrich, and Schöps were supervised and directed by Dr. Hesselman, who was the Enmodes R&D lead working on Project Dragon.  Docket No. 157-4 at 15.  Dr. Hesselman is a custodian in this action.  Id.

"Relatively little legal authority exists on the standards a court should apply when parties are unable to agree on designated ESI custodians and a party seeks to compel another party to designate an additional ESI custodian or custodians."  In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Practices and Antitrust Litig., No. 17-md-2785-DDC-TJJ, 2018 WL 1440923, at *2 (D. Kan. Mar. 15, 2018).  As relevant here, other courts have set the following general principles when ruling on a party's request to compel designation of ESI custodians.  "Absent agreement among the parties, the party who will be responding to discovery requests is entitled to select the custodians it deems 'most likely to possess responsive information and to search the files of those individuals.'"  Id.  "[U]nless the party's choice is 'manifestly unreasonable or the requesting party demonstrates that the resulting production is deficient,' the court should not dictate the designation of ESI custodians."  Id.  In addition, the party seeking to compel the designation of a particular ESI custodian bears the burden of demonstrating that the additional requested custodian "would provide *unique* relevant information not already obtained."  Fort Worth Employees' Retirement Fund v. J.P. Morgan Chase & Co., 297 F.R.D. 99, 107 (S.D.N.Y. 2013) (emphasis in original).  "This is because the party responding to the discovery requests is typically in the best position to know and identify those individuals within its organization likely to have information relevant to the case."  In re EpiPen, 2018 WL 1440923, at *2.

With respect to Wischnewski, Abiomed has not provided any legal authority to compel the Defendants to designate as a custodian an individual employed by a separate corporation that is not a party to this litigation.  With respect to the remaining custodians, Abiomed has not met its burden to show that they possess unique relevant information not already obtainable from the custodians already designated by the Defendants.  Accordingly, this Court denies Abiomed's request to compel Defendants to collect and produce responsive documents from the additional

custodians.

     5.     Defendants' Request For A Protective Order
               Prohibiting Discovery Regarding Project Dragon

Defendants have not shown good cause for a blanket protective order precluding any further discovery on Project Golden Dragon or other allegations in the Amended Complaint. First, Defendants request a blanket protective order not based on any particular discovery request.  In their motion, Defendants point to a few examples of requests they argue are overly broad and/or not proportional to the needs of the case.  The propriety of the requests should be taken on a case-by-case basis.  This Court also notes that the Defendants' responses to those requests, however, suggested they would in fact be producing responsive documents.  See, e.g., Docket No. 176-8 at 7, 9.[5]

To the extent that Defendants argue that discovery regarding Project Golden Dragon would be too burdensome, they have provided no specifics regarding the alleged burden.  See New England Compounding Pharmacy, Inc. Prods. Liab. Litig., MDL No. 13-2419-FDS, 2013 WL 6058483, at *6 (D. Mass. Nov. 13, 2013) (party resisting discovery on the basis of undue burden "cannot rely on a mere assertion that compliance would be burdensome and onerous without showing the manner and extent of the burden and the injurious consequences of insisting upon compliance.").  Defendants suggest that Abiomed's requests would require the production of all of the purportedly 12.5 terabytes of data regarding Project Golden Dragon, see Docket No. 162-7 at 19-20, but they have failed to substantiate this speculation with, for example, hit reports showing the volume of unique documents that would need to be produced or explain what that

---

[5] Those responses do not comply with Rule 34(b)(2)(C) of the Federal Rules of Civil Procedure because Defendants did not indicate what documents, if any, they were withholding based on their objections.

data is and why it would be responsive to Abiomed's requests.  Accordingly, this Court denies

the Defendants' motion for a protective order.

      6.    <u>Extension Of The Fact Discovery Deadline</u>

    In light of the additional discovery being compelled by this order,[6] and in order to allow

the parties to conduct follow up discovery and depositions, this Court extends the fact discovery

deadline to October 18, 2024.

III.    <u>ORDER</u>

    For the foregoing reasons, this Court grants in part and denies in part Abiomed's motion

to compel and denies the Defendants' motion for a protective order.

 /s/ Jennifer C. Boal            <br>
JENNIFER C. BOAL<br>
U.S. MAGISTRATE JUDGE

---

[6] On August 26, 2024, Judge Casper denied the parties' joint motion to extend the scheduling order deadlines, except that it referred the motion to the undersigned with respect to the fact discovery deadline.  Docket No. 192.